**PHOCEENE SOUS–MARINE, S. A.,**
**Plaintiff-Appellee,**

v.

**U. S. PHOSMARINE, INC., and Samuel G. Lecocq, Defendants-Appellants.**

**No. 80–5712.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1982.

Decided July 27, 1982.

Charles H. Thomas, Cislo, O'Reilly & Thomas, Long Beach, Cal., for defendants-appellants.

Jim P. Mahacek, Kunath & Talley, Laguna Hills, Cal., argued for plaintiff-appellee; Walter A. Talley, Kunath & Talley, Laguna Hills, Cal., on brief.

Before CHAMBERS, ELY and NORRIS, Circuit Judges.

ELY, Circuit Judge:

This appeal requires a determination whether a district court may enter a default judgment against a defendant as a sanction for the defendant's deceiving the court on a matter wholly unrelated to the merits of the defendant's case. We conclude that the entry of default under such circumstances is inconsistent with the requirements of due process and therefore reverse the judgment of the District Court and remand the case for further proceedings.

## I. FACTS

On October 20, 1978, appellee Phoceene Sous-Marine ("Phoceene") brought this action against appellants U. S. Phosmarine, Inc. and Samuel G. Lecocq[1] for patent and trademark infringement, wrongful disclosure and appropriation of trade secrets, unfair competition, and failure to pay an account stated. Trial was originally scheduled for February of 1979 but, because of the complexity of the case, was continued until August of that year. Approximately one week prior to the August trial date, appellants' attorney requested an additional continuance until October of 1979. The basis asserted for this continuance was that a conflict existed between the attorney's vacation schedule and the scheduled trial date. The District Court granted the continuance and trial was rescheduled for October 10, 1979. At a pretrial hearing on October 9,

1. When necessary, U. S. Phosmarine and Samuel G. Lecocq will be referred to collectively as "appellants."

1979, appellants' attorney once again requested a continuance, asserting that Samuel Lecocq had suffered a physical and nervous breakdown while in France and would be unable to attend trial for approximately 45 days.[2] Because Lecocq's presence would significantly aid the presentation of appellants' case, the District Court granted the continuance, but ordered Lecocq to submit to examination by an independent physician.

The circumstances surrounding Lecocq's alleged illness require extended discussion. On October 1, 1979, nine days prior to the scheduled trial date, Lecocq left the United States for France, allegedly to visit his ailing mother. Shortly after his arrival in France, Lecocq allegedly became ill, complaining of chest pains and an arrhythmic heartbeat. Lecocq mentioned these ailments to his sister, Madeleine Martin, the Director of Nursing at Bon Repos Hospital, Bourg-en-Bresse, France. Ms. Martin then attempted, on October 2 or 3, to arrange for an examination of Lecocq by Dr. J. Paul Renand, a French physician affiliated with the Bon Repos Hospital.[3] Because of his busy schedule, Dr. Renand was unable to schedule an appointment for Lecocq prior to October 5.

On October 3, Lecocq telephoned his attorney[4] and allegedly stated: "I'm beat—any way to postpone the trial?"[5] Lecocq's attorney replied that a continuance could be obtained on the basis of Lecocq's illness only if a statement confirming that illness were obtained from a physician. On October 3, prior to any consultation with a physician, Lecocq's sister, with Lecocq's knowledge and consent,[6] sent a telegram to the court under Dr. Renand's name stating:

"Due to extremely grave condition of Mr. Samuel Lecocq's mother and great stress in business affairs the patient is suffering mental and physical exhaustion. Mandatory that Mr. Lecocq refrain from activity which would result in physical or mental stress for at least 45 days."

(punctuation added).[7] This telegram, although sent under Dr. Renand's name, was sent without Dr. Renand's knowledge or consent and was relied upon by the District Court in granting Lecocq's motion for a continuance. In fact, Lecocq was not examined by Dr. Renand until October 5, two days after the telegram was dispatched.

During subsequent proceedings, Lecocq consistently endeavored to prevent disclosure of the circumstances surrounding the dispatch of the telegram. Lecocq originally contended that the telegram was sent by Dr. Renand's English-speaking assistant pursuant to the doctor's instructions. When it was discovered that Dr. Renand had no such assistant, Lecocq contended that, although the telegram was sent by his sister, the telegram was in accordance with a certificate issued by Dr. Renand following the doctor's examination of Lecocq. When it was discovered that the telegram was sent prior to Lecocq's examination by Dr. Renand, Lecocq admitted that the telegram was sent by his sister but contended that, under French medical practice, his sister, as a nurse, was authorized to send the telegram under Dr. Renand's name prior to

2. Appellants' attorney also based his request for a continuance on the contention that the case was not yet ready for trial. The district judge rejected that contention.

3. Lecocq's sister, Madeleine Martin, was not employed by Dr. Renand.

4. Gilbert Thomas, Lecocq's attorney at that time, is no longer representing Lecocq and new counsel has been retained.

5. Lecocq gave this account of his telephone conversation to Dr. Sheffner, a physician retained by Phoceene to examine Lecocq.

6. Lecocq originally stated that he was present when the telegram was sent. Although Lecocq later changed his testimony on this issue, the District Court found that Lecocq was aware that the telegram was being sent prior to Lecocq's being examined by Dr. Renand. This finding is amply supported by the record.

7. This telegram was sent in the English language. Dr. Renand does not speak or write in the English language.

Lecocq's examination by the doctor.[8] According to the affidavit by Dr. Renand, Lecocq's efforts to suppress the true information regarding the circumstances surrounding the telegram even extended to attempts to convince Dr. Renand to testify falsely that the telegram was sent after Lecocq had been examined.

The District Court found that in falsely sending the above-referenced telegram,[9] Lecocq had willfully deceived the court.[10] The court thereafter struck appellants' pleadings, entered default judgment, and issued a preliminary injunction against appellants.[11]

## II.  DISCUSSION

### A.  Jurisdiction

■ After entering default judgment against appellants, the District Court granted Phoceene's request for preliminary injunctive relief. 28 U.S.C. § 1292(a) confers upon this Court jurisdiction to review orders of the District Court granting or denying injunctive relief. This review "extends to all matters inextricably bound up with the . . . [injunction] and the court . . . may consider the merits of the case . . . ." Wright, *Federal Courts* 513 (3d ed. 1976); *accord, Aerojet-General Corp. v. American Arbitration Ass'n*, 478 F.2d 248, 252–53 (9th Cir. 1973). Here, issuance of injunctive relief was premised solely upon the entry of default against appellants. Accordingly, the entry of default is "inextricably bound up with" the injunction and we therefore have jurisdiction to evaluate the propriety of the entry of default under 28 U.S.C. § 1292(a).

### B.  The Propriety of the Default Judgment

Appellants challenge the entry of default in the present case on two grounds.[12] First, appellants contend that the evidence was insufficient to establish that Lecocq perpetrated a fraud on the court. Second, appellants contend that, even if the evidence was sufficient to establish a fraud on the court, the district judge lacked the power to enter default as a sanction for that fraud. We address the former contention first.

■ Lecocq's conduct clearly does not constitute a "fraud on the court" as that term has previously been defined in this Circuit. A "fraud on the court" is "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960). Lecocq's deception was clearly not an attempt to influence the court's ultimate decision on the merits. Rather, it was apparently designed solely to delay trial of the matter. Accordingly, we conclude that Lecocq's conduct does not constitute a "fraud on the court." Our inquiry does not end there, however. Lecocq is alleged to have willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice. Such conduct, if proved, would clearly merit the imposition of severe sanctions. We must therefore determine whether the evidence below was sufficient

---

**8.** The District Court rejected this contention and expressly found that the conduct of Lecocq's sister was not permitted under French medical custom.

**9.** Lecocq also defied or ignored numerous court orders mandating production of his medical records. Lecocq eventually complied with these orders and the entry of default rested exclusively on Lecocq's deceiving the court regarding his alleged illness.

**10.** The District Court styled Lecocq's deception as a "fraud on the court." As noted below, however, Lecocq's conduct technically does not amount to a "fraud on the court" as that term has been defined previously.

**11.** The issuance of the preliminary injunction was clearly based upon the entry of default judgment against appellants. Because the entry of default was error, the injunction issued by the District Court cannot stand. Accordingly, we need not address appellants' contentions that the injunctive relief ordered by the District Court was improper.

**12.** Appellants also contend that the district judge abused his discretion in entering the default judgment. Because we conclude that the entry of default judgment was beyond the power of the District Court in this case, we need not consider this contention.

to establish that Lecocq willfully misled the court and, if the evidence was sufficient, whether the entry of default was a permissible means of sanctioning that conduct consistent with the requirements of due process.

■ Appellants' contention that the evidence was insufficient to establish that Lecocq willfully deceived the court is wholly without merit. It is undisputed that the October 3 telegram purporting to come from Dr. Renand was sent prior to Lecocq's examination by the doctor. When questioned about the telegram and the circumstances surrounding its dispatch, Lecocq told numerous contradictory stories. Moreover, at no time did Lecocq come forward and explain the circumstances surrounding the telegram. Under these circumstances, we conclude that the evidence was sufficient to clearly and convincingly establish that Lecocq willfully deceived the court in an effort to delay trial.[13]

We now turn to Lecocq's contention that the District Court lacks power to enter default as a sanction for Lecocq's deceptive conduct. We somewhat reluctantly conclude that Lecocq's position has merit and that the entry of default as a sanction for a deception of the court on a matter wholly unrelated to the merits of the controversy is inconsistent with the requirements of due process. Accordingly, we reverse the judgment of default and remand the cause for further proceedings.

■ It is firmly established that the courts have inherent power to dismiss an action or enter a default judgment to ensure the orderly administration of justice and the integrity of their orders. *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975); *O'Brien v. Sinatra*, 315 F.2d 637, 641 (9th Cir. 1963). This power is limited, however, by the requirements of due process. *Hovey v. Elliot*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897); *Securities & Exchange Comm'n v. Seaboard Corp.*, 666 F.2d 414, 416–17 (9th Cir. 1982). In *Hovey*, the Supreme Court held that a court could not, consistent with the requirements of due process, strike a defendant's answer and enter default as punishment for contempt. *Hovey v. Elliot*, 167 U.S. at 413–14, 17 S.Ct. at 843. The decision was based principally on the notion that a party should not be deprived of his opportunity to defend based on factors unrelated to the merits of his case.

The Supreme Court subsequently limited *Hovey* in *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349–54, 29 S.Ct. 370, 379–381, 53 L.Ed. 530 (1909). There the Court held that the entry of default was a permissible sanction for the defendant's failure to comply with a court order to produce documents. The Court's decision was premised on the idea that one may reasonably infer from the suppression of relevant evidence that the defendant's case is lacking in merit. *Id.* at 351, 29 S.Ct. at 380. "[T]he generating source of the power [to enter default] was the right to create a presumption flowing from the failure to produce." *Id.*

■ In the present case, Lecocq's deception related not to the merits of the controversy but rather to a peripheral matter: whether Lecocq was in fact too ill to attend trial on October 10. Because the deception was wholly unrelated to the matters in controversy, no legitimate inference regarding the merits of Lecocq's position may be drawn. Accordingly, the entry of default in the present case was impermissible. *See Securities & Exchange Comm'n v. Seaboard Corp.*, 666 F.2d at 417.[14]

---

13. "Fraud on the court" must be proved by clear and convincing evidence. *England v. Doyle*, 281 F.2d 304 (9th Cir. 1960). Appellants contend that this standard is also applicable to the case at bar. We need not resolve this question here, however, because we conclude that the evidence was more than sufficient to "clearly and convincingly" establish that Lecocq willfully deceived the court below.

14. Phoceene contends that we may presume appellants' case was lacking in merit from Lecocq's unwillingness to go to trial expeditiously. We disagree. Mere dilatory tactics provide

## III. CONCLUSION

We are not unsympathetic to the plight of the district judge in the present case. When faced with a recalcitrant, deceitful party, the district judge exercised admirable restraint. We hold, however, that default may not be entered as a sanction for a party's deception where that deception relates only to a peripheral matter not at issue in the suit. Accordingly, the judgment of the District Court is reversed and the case remanded for further proceedings not inconsistent with this OPINION.

REVERSED.

too insubstantial a foundation to support such a presumption.