Frederick S. WYLE, Professional Corp., Trustee in Bankruptcy for Pacific Far East Line, Inc., Bankrupt, Plaintiff-Appellant,

v.

R.J. REYNOLDS INDUSTRIES, INC., R.J. Reynolds Tobacco Company, R.J. Reynolds Leasing Company, Sea-Land Services, Inc., and McLean Industries, Inc., Defendants-Appellees.

No. 82–4266.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 18, 1983.

Decided June 30, 1983.

William A. Wineberg, Jr., Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for plaintiff-appellant.

Guy M. Struve, Lawrence E. Walsh, Mark E. Segall, Robert D. Kimball, Davis, Polk & Wardwell, New York City, Charles B. Cohler, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for defendants-appellees.

Before WRIGHT, CANBY, and BOOCHEVER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In this appeal, we consider whether the district court abused its discretion when it dismissed Pacific Far East Line's (PFEL) complaint as a sanction for its false denials of rebating and its failure to comply with the court's discovery orders. We find the dismissal appropriate and affirm.

## I. FACTS

On December 19, 1976, PFEL filed an amended complaint under § 4 of the Clayton Act, 15 U.S.C. § 15, alleging that Sea-Land had paid approximately $20 million in illegal rebates from 1971 through 1975. In its response, Sea-Land admitted that it had paid more than $19 million in possibly illegal rebates, but alleged by way of affirmative defense and counterclaim that PFEL had violated the antitrust laws by paying similar rebates and that PFEL had falsely denied rebating. PFEL denied Sea-Land's allegations, counterclaimed against Sea-Land, and demanded a jury trial.

In addition to filing pleadings denying the allegations of Sea-Land's affirmative defense and counterclaim, PFEL through its officers gave sworn testimony and filed sworn answers to interrogatories denying that the company had paid rebates during the relevant time period, January 1970 to October 1976, when PFEL filed suit. PFEL's counsel, Alioto & Alioto, made similar representations to the court.

On July 24, 1978, Sea-Land moved for sanctions against PFEL on the grounds that (1) PFEL had falsely represented to the court and during discovery that it had not engaged in rebating; and (2) PFEL had failed to comply with court orders directing the production of documents concerning PFEL's rebating practices. The motion sought several alternative sanctions, including dismissal of the complaint, striking the allegations of Sea-Land's rebating, or directing that it be taken as established at trial that PFEL had paid illegal rebates.

On December 13, 1978, during a hearing on a different issue, counsel for PFEL admitted that one of PFEL's agents, Nippon Maritime, had engaged in rebating before October 1976. Even though this rebating was done with the knowledge of a PFEL employee and with PFEL funds, PFEL disclaimed responsibility for the rebates. It argued that the rebates were prohibited by PFEL's contract with Nippon and had not been authorized by John Alioto, PFEL's president, until February 1978.

In January 1979, the district court announced its intention to hold an evidentiary hearing on the issues raised by Sea-Land's motion for sanctions. PFEL vigorously opposed such a hearing, contending that it would decide the very issue of rebating presented in the litigation and thereby deny its right to a jury trial. Hearings were held between June 29 and July 18, 1979, and again in May, June, and September 1980.

Meanwhile, in August 1978, PFEL was adjudicated a bankrupt and Robert Benedict was appointed trustee. After replacing Benedict as trustee in 1979, Frederick Wyle retained Broad, Khourie and Schulz as new counsel and appeared as the named plaintiff in May 1980. Wyle also filed amended answers to Sea-Land's counterclaim and interrogatory 4(d), admitting that agents of PFEL had engaged in rebating for some time before December 1976 and that PFEL had done so since January or February 1977.

The district court's opinion and order of September 3, 1981 dismissed PFEL's complaint and counterclaim. On a motion for

reconsideration, the court issued a new opinion and order reaffirming the dismissal and certified the case for appeal under Fed. R.Civ.P. 54(b).

On appeal, PFEL contends that (1) the district court abused its discretion in granting dismissal because PFEL's misconduct, if any, was not willful; (2) the dismissal violated PFEL's right to a jury trial; (3) the imposition of dismissal as a sanction is inconsistent with the Bankruptcy Act; (4) Federal Rule of Civil Procedure 11 precludes dismissal; and (5) the district court's opinion is ambiguous and relies too heavily on Sea-Land's briefs.

## II. THE SANCTION OF DISMISSAL

### A. Standard of Review

■ Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *United States v. Sumitomo Marine & Fire Insurance Co.,* 617 F.2d 1365, 1369 (9th Cir. 1980). When choosing among possible sanctions, the district court may consider the deterrent value of an order of dismissal on future litigants as well as on the parties. *National Hockey League,* 427 U.S. at 642–43, 96 S.Ct. at 2780–81.

■ We shall not disturb the district court's exercise of discretion unless the record creates "a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors'."

*Anderson v. Air West, Inc.,* 542 F.2d 522, 524 (9th Cir.1976) (quoting *In re Josephson,* 218 F.2d 174 (1st Cir.1954). Dismissal, however, is authorized only where the failure to comply is due to willfulness, bad faith, or fault of the party. *National Hockey League,* 427 U.S. at 640, 96 S.Ct. at 2779; *Sigliano v. Mendoza,* 642 F.2d 309, 310 (9th Cir.1981).

■ Additionally, courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice. *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir.1982).

■ The requirements of due process limit the court's exercise of its inherent power. *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 349–54, 29 S.Ct. 370, 379–81, 53 L.Ed. 530 (1909); *Phoceene Sous-Marine,* 682 F.2d at 806. Dismissal is a permissible sanction only when the deception relates to the matters in controversy, and because dismissal is so harsh a penalty, it should be imposed only in extreme circumstances.[1] *Raiford v. Pounds,* 640 F.2d 944, 945 (9th Cir.1981).

### B. Propriety of Dismissal

■ The district court based its decision to dismiss PFEL's complaint and counterclaim on two findings: (1) knowingly false denials of rebating by PFEL and its counsel, Alioto & Alioto; and (2) the Alioto firm's deliberate efforts to frustrate the production of documents on rebating.[2] On appeal, PFEL contends that the court drew unreasonable inferences from ambiguous

[1] PFEL contends that a dismissal may be entered only if irreparable harm has been caused to the adverse party. Although this factor has been required for a Rule 41(b) dismissal, *Raiford v. Pounds,* 640 F.2d 944, 945 (9th Cir.1981) (per curiam), it is merely one of many relevant factors that may guide the court's selection of an appropriate sanction in a given case. *See United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F.2d 1365, 1369–70 (9th Cir.1980).

[2] PFEL argues that the district court's findings must be reviewed under a directed verdict standard because the court decided jury issues at the evidentiary hearings. However, when a district court makes findings of fact in connection with a motion for sanctions, we review those findings under the clearly erroneous standard to determine whether they are supported by the record. *See, e.g., Anderson v. Air West, Inc.,* 542 F.2d 1090, 1093 (9th Cir.1976); *Hindmon v. National-Ben Franklin Life Ins. Corp.,* 677 F.2d 617, 621 (7th Cir.1982). The uncontradicted evidence supports the district court's findings of fact under either standard.

evidence to find willful misconduct by PFEL and its counsel.

### (1) Denials of rebating

■ On numerous occasions between December 1976 and August 1979, PFEL denied that it had engaged in rebating before October 1976. Further, John Alioto, then president of PFEL, testified at his deposition in November 1976 that "we do not rebate in any trade."

The record supports the finding that these denials were knowingly false. Four senior officers of PFEL, Tarantino, Modica, Elliot, and Smith, knew that PFEL's agent, Nippon Maritime, had rebated before October 1976. Their knowledge is imputable to PFEL. See General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1210–11 (8th Cir. 1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).[3]

■ PFEL challenges also the finding that the Alioto law firm deliberately deceived the court about PFEL's rebating. The court concluded that Alioto & Alioto's failure to investigate PFEL's denials of pre-October 1976 rebating, even after learning in December 1976 that the company had been fined for rebating, was "the equivalent of knowledge of the truth." PFEL argues that the record does not support such a conclusion.

The record shows, however, that besides the December 1976 fine, the firm met with PFEL in 1977 to discuss rebates paid during that year and, in July 1978, the firm learned that PFEL's agents had paid rebates before October 1976. The district court did not err in concluding that the law

firm's deliberate ignorance constituted the equivalent of knowledge of the truth. See United States v. Nicholson, 677 F.2d 706, 710–11 (9th Cir.1982) (one who is aware of a high probability of the existence of a fact, but deliberately ignores the fact, is deemed to have knowledge of the fact).

### (2) Production of rebating documents

Sufficient evidence supports the district court's finding that PFEL, through Alioto & Alioto, willfully failed to comply with discovery orders to produce rebating documents possessed by PFEL or its agents.[4] In July 1978, after PFEL had failed to comply with a previous order to produce such papers, the court ordered it to direct its agents in the Far East to provide Sea-Land's representatives with immediate and continuous "neutral body" access to rebating and related documents.[5] The order set forth the text of a telex to be sent by PFEL to its agent. However, the Alioto firm sent a second telex forbidding PFEL's agents to answer questions or produce documents about PFEL's rebating without authorization from a representative of the Alioto firm.

PFEL argues that (1) the district court unreasonably inferred that the second telex was kept secret; (2) the court's order requiring production by PFEL's agents was improper and overbroad; and (3) the court improperly ignored the report of Special Master Douglas Young.

■ PFEL's first argument lacks merit. PFEL's certificate of compliance filed pursuant to the court's July 1978 order did not reveal the existence of the second telex.

**3.** PFEL argues that Modica's and Elliot's knowledge should not be imputed to PFEL because those officers left the company three months before PFEL answered interrogatories and produced documents. But PFEL had an obligation to obtain relevant information from former officers. See General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1210 (8th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

**4.** PFEL contends that willful failure to comply has not been established because the existence of withheld documents is merely speculative.

We conclude, however, that the district court did not clearly err in finding that Sea-Land had not received all existing documents regarding Container Control, an off-book PFEL account.

**5.** "Neutral body access" is a term used in the shipping industry. The Investigation Guidelines of Freight Conference Services, Inc., the neutral body in the Pacific trade, set forth the meaning of neutral body access: Carriers and their agents must provide truthful and complete information or materials promptly and without prior screening.

The court and Sea-Land did not learn of it until May 28, 1980.

■ Second, PFEL correctly points out that its agents were confused by the "neutral body" access ordered by the court. Its characterization of the confusion as a good faith misunderstanding of an overbroad order, however, is disingenuous given the text of the second telex.

■ Finally, PFEL's contention that the court improperly ignored Special Master Young's report is not supported by the record. It argues that the court's decision disregards the "critical findings in the report" concerning the ambiguity of the "neutral body" language of the court-ordered telex and concerning efforts by PFEL's counsel to obtain compliance by the company's agents.

Young, however, did not know of the second telex when he wrote his report. Though he could not have assessed how that telex influenced the lack of cooperation by PFEL's agents, he concluded that the agents had not fully complied with the discovery order.

### C. Due Process Considerations

■ A district court's use of sanctions is limited by two standards. "First, any sanction must be 'just;' second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982). Sanctions interfering with a litigant's claim or defenses violate due process when imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case. *G–K Properties v. Redevelopment Agency,* 577 F.2d 645, 648 (9th Cir.1978).

PFEL contends that (1) the dismissal was unrelated to the issue of rebating by PFEL; and (2) the sanction was punitive because dismissal was disproportionate to the violation.

■ With respect to the first point, the issue of rebating is clearly relevant to Sea-Land's defense and counterclaim. Although PFEL's illegal conduct could not be raised as a complete bar to its antitrust action, Sea-Land could have used that evidence to controvert the existence of damages or limit the amount. *See First Beverages, Inc. v. Royal Crown Cola Co.,* 612 F.2d 1164, 1174–75 (9th Cir.), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980).

■ PFEL bases its second point on the premise that, when a party has come forward with the information sought to be discovered, dismissal is an impermissibly harsh sanction. Although *SEC v. Seaboard Corp.,* 666 F.2d 414, 417 (9th Cir.1982), does stand for this proposition, it is distinguishable from cases such as this where PFEL made only a partial last-minute tender of documents or information. *See, e.g., G–K Properties,* 577 F.2d at 647.

■ Moreover, PFEL's argument that the sanction is disproportionately harsh does not withstand scrutiny. Unless we uphold the dismissal, PFEL will profit from its own failure to provide discovery. *See Dellums v. Powell,* 566 F.2d 231, 235 (D.C. Cir.1977). The district court expressly found that monetary sanctions would be insufficient because PFEL withheld "the essential evidence needed to establish the true extent of its rebating." Additionally, the court weighed the relevant factors, and determined that the deliberate deception and the irreparable loss of material evidence justified the sanction of dismissal. Although this court might have settled on a different sanction had we considered the question originally, the district court's decision clearly falls within the acceptable range. *See Chism v. National Heritage Life Insurance Co.,* 637 F.2d 1328, 1331 (9th Cir.1981).

### III. RIGHT TO A JURY TRIAL

PFEL argues that the district judge violated its right to a jury trial by holding the evidentiary hearing. We have not previously addressed the relationship between

Rule 37 procedures and the right to a jury trial when the issues raised at the evidentiary hearing go to the merits of the case.

The Fourth Circuit has stated that the district court's range of discretion to impose sanctions under Rule 37 is narrower when entering a dismissal or default judgment because that sanction represents an infringement upon the party's right to trial by jury. *Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 503–04 (4th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978).

That court did not hold, however, that a jury trial is required on the issues presented by the motion, but merely that the appellate court must scrutinize the order more closely. *Id.* We have held that a Rule 37 dismissal does not violate the right to a jury trial where a party fails to comply with court-ordered discovery. *McMullen v. Travelers Insurance Co.,* 278 F.2d 834 (9th Cir.) (per curiam), *cert. denied,* 364 U.S. 867, 81 S.Ct. 110, 5 L.Ed.2d 89 (1960).

When necessary, the district court may hold an evidentiary hearing on a motion for sanctions. Indeed, that method best determines the appropriate sanctions while protecting a party's due process rights. *See, e.g., United States v. Westinghouse Electric Corp.,* 648 F.2d 642, 652 (9th Cir.1981); *cf. Edgar v. Slaughter,* 548 F.2d 770, 773 (8th Cir.1977) (fundamental fairness may require a hearing on sanctions).

In the course of such hearings, a court will make inferences and credibility determinations from evidence received. No sound basis exists to distinguish between hearing issues that go to the merits of the case and those that go only to the conduct of the parties.

By its terms, Rule 37 authorizes the sanction of dismissal, and a punitive dismissal is equivalent to an adjudication on the merits. *See Stebbins v. State Farm Mutual Automobile Insurance Co.,* 413 F.2d 1100, 1102 (D.C.Cir.), *cert. denied,* 396 U.S. 895, 90 S.Ct. 194, 24 L.Ed.2d 173 (1969). That the court here chose to hold hearings to decide upon sanctions, in effect determining the merits of the case, did not violate PFEL's jury trial right.

## IV. EFFECT OF PFEL's BANKRUPTCY

PFEL contends that the imposition of dismissal is inconsistent with the Bankruptcy Act. First, it argues that § 57j, 11 U.S.C. § 93(j), bars the assessment of penalties against the estate of the bankrupt. Yet that section does not bar dismissal of claims asserted by the bankrupt estate against other parties when the bankrupt has been guilty of fraud in prosecuting the claim. *Goggin v. United States,* 152 F.Supp. 78, 138 Ct.Cl. 279 (Ct.Cl.1957). The trustee in bankruptcy takes derivative rights that are not superior to those of the bankrupt. *Id.* at 79.

Second, PFEL argues that the purposes of Rule 37 sanctions, deterrence and punishment, militate against imposing dismissal on the trustee in bankruptcy. Specifically, it contends that the wrongdoers, PFEL officers, agents, and attorneys, will go unpunished at the expense of innocent creditors.

Although there may be some equity in this argument, the rights of creditors derive from those that the company had before its bankruptcy, and the creditors may not profit from PFEL's misconduct. *Goggin,* 152 F.Supp. at 79. We have affirmed the imposition of discovery sanctions in other cases when the sting of the sanction was felt largely by those other than wrongdoers. *E.g., Chism,* 637 F.2d at 1332; *G–K Properties,* 577 F.2d at 648–49.

Finally, PFEL asserts that dismissal was improper because the trustee was neither negligent nor willful. The district court stated correctly that this argument "ignores the trustee's status as a substituted party." Because a substituted party steps into the position of the original party, the trustee was subject to sanctions to the same extent as PFEL. *See United States v. Miller Brothers Construction Co.,* 505 F.2d 1031, 1036 (10th Cir.1974).

Additionally, the court found that trustee Benedict's failure to take remedial action

and trustee Wyle's failure to investigate bound them to the fraud and discovery abuses of PFEL. We need not decide whether the record justifies imposition of sanctions based solely on Wyle's and Benedict's failures. Their status as substituted parties is sufficient to support the district court's decision to dismiss. *See id.*

## V. OTHER ARGUMENTS

PFEL raises two additional arguments: (1) the dismissal of its complaint was not authorized under Federal Rule of Civil Procedure 11; and (2) the district court's opinion is ambiguous and relies too heavily on Sea-Land's brief.

PFEL contends that dismissal of the complaint, as opposed to striking the answer to Sea-Land's counterclaim, was not warranted under Rule 11. Although this argument might be valid if the court had based its judgment solely on Rule 11, its authority under Rule 37 and its inherent powers render PFEL's argument totally meritless. *See, e.g., Phoceene Sous-Marine v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 805–06 (9th Cir.1982).

We reject the contention that the court's opinion is ambiguous and unclear. After making extensive findings based on a massive and confusing record, the court detailed the basis for its decision to impose sanctions and the grounds for selecting dismissal as a remedy.

PFEL's objection to the court's reliance on Sea-Land's brief presents a difficult question. Heavy reliance on a litigant's findings raises the possibility that there was insufficient independent analysis of the record. *Photo Electronics Corp. v. England,* 581 F.2d 772, 776–77 (9th Cir.1978). Wholesale adoption of a party's findings requires that we scrutinize the findings more closely than we might otherwise. *Id.*

About 70 percent of the court's opinion is taken verbatim from Sea-Land's post-hearing briefs. Nonetheless, the record suggests that the district judge was intimately familiar with the facts and issues in this case. After careful scrutiny of the adopted findings, we conclude that he independently evaluated the evidence and did not abuse his discretion in accepting the suggested findings. *See Loctite Corp. v. Fel-Pro, Inc.,* 667 F.2d 577, 582–83 (7th Cir. 1981).

The judgment is affirmed.