762 F.2d 1334
 2 Fed.R.Serv.3d 196
 Heather FJELSTAD, a minor, et al., Plaintiffs/Appellees,
v.
AMERICAN HONDA MOTOR CO., INC., and Honda Motor Co., Ltd.,
Defendants/Appellants.
HONDA MOTOR CO., LTD., Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the DISTRICT OF MONTANA, Respondent,
and
Heather Fjelstad, a minor, et al., Real Parties In Interest.
AMERICAN HONDA MOTOR CO., INC., Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the DISTRICT OF MONTANA, Respondent,
Heather Fjelstad, a minor, et al., Real Parties in Interest.
 Nos. 84-4058, 84-4059, 84-7419 and 84-726.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1985.
Decided June 11, 1985.
As Amended on Denial of Rehearings June 24 and June 25, 1985.
 
 James A. Poore, III, Poore, Roth & Robinson, P.C., Butte, Mont., Randall H. Bellingham, Moulton, Bellingham, Longo & Mather, Billings, Mont., Irving H. Greines, Kent L. Richland, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for defendants-appellants.
 Donald W. Molloy, Billings, Mont., Theodore R. Dunn, Goetz, Madden & Dunn, Bozeman, Mont., for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Montana.
 Before FARRIS, ALARCON and FERGUSON, Circuit Judges.
 FARRIS, Circuit Judge.
 
 BACKGROUND
 
 1
 This personal injury action arose from a collision between a Honda motorcycle driven by the minor plaintiff, then age twelve, and a farm implement called a tractor-ditcher. In their first amended complaint, the plaintiffs asserted theories of negligence and product liability against American Honda Motor Co., Inc., the distributor of the motorcycle, and Custom Products of Litchfield, Inc., the manufacturer of the tractor-ditcher cab. With respect to American Honda, the plaintiffs contended that the motorcycle's lack of conspicuity caused or contributed to the minor plaintiff's injuries. They alleged that the design of the motorcycle was defective because the headlight did not illuminate automatically when the engine was running and that American Honda negligently failed to provide adequate warnings about daytime headlight use in the owner's manual and on the motorcycle itself.
 
 
 2
 The plaintiffs served their first set of interrogatories upon American Honda on October 27, 1982. American Honda did not respond or object to the interrogatories or seek a protective order within thirty days as required by Rule 33(a) of the Federal Rules of Civil Procedure. After months of informal efforts on the part of plaintiffs' counsel to obtain answers to the interrogatories, the district court issued an order on March 8, 1983 directing all counsel to "meet all discovery deadlines imposed by the Federal Rules of Civil Procedure and all Court-imposed deadlines." Two days later, American Honda served an unsworn rough draft of its answers to some of the interrogatories upon the plaintiffs.
 
 
 3
 On May 13, 1983, the plaintiffs moved for imposition of sanctions upon American Honda for failure to respond to discovery. On August 8, the court amended its order of July 29 to provide that American Honda answer all of the plaintiffs' interrogatories "fully and completely" by August 29 unless it informed the court by affidavit that it could not provide the requested information. On August 23, American Honda informed the court that it could not provide design and manufacturing information because it was in the sole possession of American Honda's Japanese parent corporation, Honda Motor Co., Ltd., which would not divulge the information until it was made a party to the lawsuit. In its opinion dated September 7 supporting its July 29 order, the district court found that American Honda's counsel was responsible for his client's tardiness in responding to the interrogatories and ordered him to reimburse the plaintiffs for the attorney's fees, expenses, and costs they incurred in bringing their motion for discovery sanctions. The court explicitly warned counsel that if further discovery problems arose, the severity of sanctions might increase.
 
 
 4
 The plaintiffs amended their complaint to join Honda Limited as a defendant and served interrogatories upon Honda Limited on September 16, 1983. On January 9, 1984, Custom Products moved for imposition of sanctions against American Honda for failure to comply with the July 29 order. Four days later, the plaintiffs moved for imposition of sanctions against both Honda defendants for their willful filing of evasive, misleading, incomplete, and false answers to interrogatories and their failure to comply with the July 29 order. The plaintiffs also moved on January 24 to compel the production of owner's manuals or to impose sanctions against American Honda. Shortly after the hearing on the plaintiffs' motions, the defendants entered into a stipulation preventing the Honda defendants from contending that the design of the tractor-ditcher cab was the proximate cause of either the collision or the minor plaintiff's injuries. In exchange, Custom Products withdrew its motion for discovery sanctions.
 
 
 5
 On March 1, 1984, the court levied a $50,000 sanction against the Honda defendants, specifically citing Honda Limited's filing of incomplete and misleading answers to interrogatories and American Honda's one year delay in producing an accident reconstruction videotape and its production of requested owner's manuals just three days before depositions. On March 19, the plaintiffs moved for imposition of a judgment of liability against the Honda defendants for their failure to comply with the March 1 order and to answer outstanding interrogatories. After a hearing on March 30, the court granted the motion as to both Honda defendants on April 2.[1] The court denied the defendants' motion for reconsideration of the April 2 order, refusing to allow them to present testimony or to file affidavits in support of their motion.
 
 
 6
 The Honda defendants appeal, asserting that the district court had no authority to impose discovery sanctions against them, that they did not receive adequate notice or an adequate opportunity to be heard on the issue of sanctions, and that their conduct did not warrant the severe sanction of default judgment on the issue of liability. We have jurisdiction over the appeals pursuant to 28 U.S.C. Sec. 1292(b).[2]
 
 STANDARDS OF REVIEW
 
 7
 We review the imposition of discovery sanctions under Rule 37 for abuse of discretion. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam); Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir.1981). The district court's "discretion will not be disturbed unless we have 'a definite and firm conviction that the court ... committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " United States v. Sumitomo Marine & Fire Ins. Co., 617 F.2d 1365, 1369 (9th Cir.1980) (quoting Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir.1976) (quoting In re Josephson, 218 F.2d 174, 182 (1st Cir.1954))). "Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith." Sigliano, 642 F.2d at 310.
 
 
 8
 "We review findings of fact related to a motion for [discovery] sanctions under the clearly erroneous standard." Professional Seminar Consultants, Inc. v. Sino Am. Technology Exch. Council, Inc., 727 F.2d 1470, 1472 (9th Cir.1984.)
 
 
 9
 The district court's selection of the applicable legal standards is reviewable de novo. United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 DISCUSSION
 I. Authority
 
 10
 The district court explicitly "relie[d] on two independent and alternative sources of power in" imposing the sanction of partial default judgment against the Honda defendants: 1) its "inherent power to supervise and establish law concerning the conduct of litigation;" and 2) Rule 37 of the Federal Rules of Civil Procedure.
 
 A. Inherent Power
 
 11
 "The inherent powers of federal courts are those which 'are necessary to the exercise of all others,' " and include "the 'well-acknowledged' inherent power ... to levy sanctions in response to abusive litigation practices." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-65, 100 S.Ct. 2455, 2463-64, 65 L.Ed.2d 488 (1980) (quoting United States v. Hudson, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)). The Supreme Court has stated that "whether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37" and that "[r]eliance upon 'inherent power' can only obscure analysis of the problem." Societe Internationale v. Rogers, 357 U.S. 197, 207, 78 S.Ct. 1087, 1093, 2 L.Ed.2d 1255 (1958). But the Court also has indicated that district courts may rely upon their inherent powers in penalizing some forms of discovery abuse. See Roadway Express, 447 U.S. at 765, 100 S.Ct. at 2463 (in limited circumstances, court has inherent power to assess attorney's fees against counsel who ignores discovery order). In this case, the district court invoked its inherent authority only to penalize conduct that it did not find to violate either its discovery orders or the discovery rules. Although Rogers therefore did not preclude the district court from relying upon its inherent authority, the court's action went beyond the scope of that authority.
 
 
 12
 In this circuit, "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 589 (9th Cir.1983). See also Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc., 682 F.2d 802 (9th Cir.1982). Due process limits the imposition of the severe sanctions of dismissal or default to "extreme circumstances" in which "the deception relates to the matters in controversy" and prevents their imposition "merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." Wyle, 709 F.2d at 589, 591.
 
 
 13
 The district court invoked its inherent authority to impose sanctions against Honda Limited[3] for its policy of refusing to disclose manufacturing and design information to American Honda before Honda Limited was joined as a defendant, its failure to disclose that policy to American Honda when American Honda first sought the information, and its "policy of providing information in a piecemeal fashion in order to force plaintiffs to seek court intervention." Unlike the knowingly false denials and deliberate efforts to frustrate the production of documents relating to a critical issue that were involved in Wyle, this conduct of Honda Limited did not deceive the court about the issues in controversy or threaten to interfere with the correct decision of this case, nor can it be characterized as "utterly inconsistent with the orderly administration of justice." This case therefore does not present the extreme circumstances that would justify imposition of a judgment of liability under the court's inherent power. See Phoeceene Sous-Marine, 682 F.2d at 806 (where defendant deliberately deceived court not about merits of controversy but rather about peripheral matter of his availability for trial, no legitimate inference regarding merits of defendant's position could be drawn and entry of default against him was improper).
 
 B. Rule 37
 1) American Honda
 
 14
 The district court based its Rule 37 sanctions against American Honda exclusively upon American Honda's failure to comply with the court's order of July 29, 1983, as amended on August 8, 1983. It relied upon Rule 37(b)(2)(C), which provides that "[i]f a party ... fails to obey an order to provide or permit discovery, ... the court ... may ... rende[r] a judgment by default against the disobedient party." Fed.R.Civ.P. 37(b)(2)(C). American Honda contends that the July 29 order, described by the district court on August 8 as an order "compelling discovery," does not constitute "an order to provide or permit discovery" within the meaning of Rule 37(b)(2) and that the district court therefore lacked the power to impose sanctions upon it under that rule.
 
 
 15
 The thrust of American Honda's argument is that because the July 29 order did not refer to specific interrogatories and did not analyze American Honda's answers, it does not satisfy the requirements of Rule 37(b)(2). American Honda reasons that if the July 29 order, which directed American Honda to answer all interrogatories fully and completely, can form the foundation for sanctions under Rule 37(b)(2), district courts simply could issue orders at the outset of every case directing the parties to comply with all discovery rules, thereby transforming the rules into orders upon which Rule 37(b)(2) sanctions could be based.
 
 
 16
 Contrary to American Honda's characterization, the July 29 order was not a blanket directive to comply with the discovery rules, as was the March 8 order, but rather focused American Honda's attention upon the interrogatories relating to ten specified topics. More importantly, no authority supports the proposition that an order must refer to specific interrogatories in order to form the basis for the imposition of sanctions under Rule 37(b)(2), and nothing in the language of the rule suggests such an interpretation. Many of American Honda's answers explicitly stated that they were incomplete, making it unnecessary for the district court to evaluate the sufficiency of each answer before ordering American Honda to answer all interrogatories completely. In very similar circumstances, we have upheld the imposition of sanctions under Rule 37(b)(2). See United States v. Westinghouse Electric Corp., 648 F.2d 642, 650-53 (9th Cir.1981) (order requiring two defendant corporations that had filed partial answers to a set of interrogatories to provide complete answers by a date certain was "an order to provide or permit discovery" within the meaning of Rule 37(b)(2)). The June 29 order was "an order to provide or permit discovery." Rule 37(b)(2) therefore gave the district court authority to impose sanctions against American Honda for violating that order.
 
 2) Honda Limited
 
 17
 The district court relied exclusively upon subsection (d) in imposing the sanction of partial default judgment against Honda Limited under Rule 37. That subsection provides that "[i]f a party ... fails ... to serve answers or objections to interrogatories," the court may enter a default judgment against that party. Fed.R.Civ.P. 37(d).
 
 
 18
 On December 29, 1983, Honda Limited filed and served upon the plaintiffs answers and objections to each of the plaintiffs' 103 interrogatories covering 85 pages. The district court recognized that "Honda [Limited] did file partial answers to some interrogatories," but found that it had authority to impose sanctions under Rule 37(d) because "[those] answers were incomplete, evasive and in some cases false."
 
 
 19
 The district court did not find that Honda Limited's many objections were meritless or that they were imposed in bad faith. It did not even rule that those objections were invalid. Cf. Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp., 711 F.2d 902, 905-06 (9th Cir.1983) (affirming entry of partial default judgment under Rule 37(b)(2)(C) where district court found that defendants' objections to interrogatories " 'were patently frivolous and interposed unjustifiably for delaying purposes' "). In these circumstances, Honda Limited did not "fai[l] ... to serve answers or objections to interrogatories." Fed.R.Civ.P. 37(d) (emphasis added). Rule 37(d) therefore did not give the district court authority to impose sanctions against Honda Limited.
 
 
 20
 II. Due Process: Vagueness, Notice, and Hearing
 
 
 21
 American Honda maintains that the July 29 order was too vague to support the imposition of discovery sanctions, that it was given insufficient notice of the conduct at issue before the hearing on the plaintiffs' motion for sanctions, and that that hearing did not afford it an adequate opportunity to address a number of the grounds for the imposition of default judgment on the issue of liability.
 
 
 22
 American Honda asserts that because the July 29 order did not refer to specific interrogatories, point out which answers were incomplete, or suggest what additional information was required, it had to guess at what the order required it to do. The July 29 order required American Honda to answer all of the plaintiffs' interrogatories completely, but it focused American Honda's attention upon the interrogatories relating to ten specified topics. Moreover, American Honda conceded that the answers that formed the basis for the imposition of sanctions were incomplete. The answers themselves promised that further information would be forthcoming, but American Honda did not supplement them at any time during the seven months between the filing of its amended answers and the imposition of default judgment. To the extent that American Honda expected the district court to tell it exactly what information it had to disclose, it expected from the court an unrealistic degree of both omniscience and supervision. We hold that the July 29 order was not unconstitutionally vague.
 
 
 23
 American Honda contends that because the plaintiffs based their March 20, 1984 motion for sanctions exclusively upon the Honda defendants' failure to comply with the district court's March 1, 1984 order, it restricted its opposition to the motion to the arguments that the March 1 order did not compel answers to interrogatories and that the Honda defendants had paid the $50,000 sanction imposed on March 1. But the March 20 motion also stated that it was based upon the plaintiffs' previous requests for sanctions, including the January 13, 1984 motion, which sought default judgment against American Honda for its "willful failure to fully and completely answer plaintiffs' interrogatories as directed by" the July 29 order. Furthermore, the caption of the March 20 motion stated that it was based, in part, on the Honda defendants' failure to answer outstanding interrogatories. The March 20 motion apprised American Honda that its failure to answer interrogatories completely was at issue.
 
 
 24
 The transcripts of the hearings on the March 20 motion for discovery sanctions and the Honda defendants' motion for reconsideration of the order entering partial default judgment reveal that American Honda had an adequate opportunity to address the issue of its failure to answer interrogatories completely. American Honda explained its reasons for failing to supplement all of the interrogatories cited by the district court in its opinion supporting the order granting partial default judgment.
 
 
 25
 We need not reach American Honda's many procedural due process arguments that relate to the district court's erroneous imposition of sanctions under its inherent authority. With respect to the sanctions imposed under Rule 37(b)(2)(C), American Honda was given sufficient notice and an adequate opportunity to be heard.
 
 III. Severity of the Sanction
 
 26
 Embodying the general due process restriction upon a court's discretion, Rule 37(b)(2) requires that "any sanction [imposed pursuant to it] must be 'just.' " Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982). Fairness demands that the severe sanction of default may not be imposed under Rule 37(b)(2) "in the absence of willfulness, bad faith, or fault." Munoz-Santana v. I.N.S., 742 F.2d 561, 564 (9th Cir.1984). The district court found that American Honda consciously and willfully refused to comply with the July 29 order.
 
 
 27
 American Honda asserts that the court applied an erroneous definition of willfulness that translated into a strict liability standard. It argues that the definition of "willfulness" adopted by the district court--"disobedient conduct not shown to be outside the control of the litigant"--runs counter to the Supreme Court's decision in Societe Internationale, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255. American Honda emphasizes that although the plaintiff in that case made a conscious decision not to produce documents that were within its "control" within the meaning of Rule 34 of the Federal Rules of Civil Procedure, the Supreme Court held that dismissal of the complaint under Rule 37(b)(2) was improper. But the Court also held that the plaintiff's inability to produce the documents was "fostered neither by its own conduct nor by circumstances within its control" but rather resulted from the operation of Swiss banking laws. Id. at 211, 78 S.Ct. at 1095. Thus, the plaintiff's inability to produce documents that were within its control within the meaning of Rule 34 was created by circumstances beyond its control for the purposes of Rule 37, preventing a finding of willfulness, bad faith, or fault on the plaintiff's part. The willfulness standard applied by the district court in the instant case, which requires the punished conduct to be within the litigant's control, is consistent with Societe Internationale. Its requirement of "disobedient conduct," which connotes deliberate malfeasance, comports with traditional notions of willful action. The standard applied by the district court was not erroneous.
 
 
 28
 American Honda further contends that under any appropriate standard, its failure to supplement its answers to the plaintiffs' interrogatories was not willful. Under the discovery schedule established by the court in its order of September 16, 1983, the parties were not required to exchange expert witness lists, experts' opinions, and other information described in Rule 26(b)(4)(A)(i) of the Federal Rules of Civil Procedure until April 2, 1984, the day that the court imposed the sanction of partial default judgment. That section of the order further provided that it "supercede[d] discovery directed to expert witnesses." American Honda argues that because of that provision, it believed that the July 29 order no longer required it to supplement its answers to most of the interrogatories cited by the district court because those answers had to be based upon experts' opinions and other information described in Rule 26(b)(4)(A)(i).
 
 
 29
 The district court found that explanation invalid for three reasons: 1) its September 7, 1983 opinion held that American Honda had waived its right to object to the form or content of the interrogatories; 2) American Honda did not seek a protective order clarifying the effect of the expert witness discovery schedule upon the July 29 order; 3) the answers in question were not within the sole province of experts.
 
 
 30
 Because the September 16 order stated that its schedule superceded discovery directed to experts, American Honda could have interpreted it to mean that it governed the disclosure of all information relating to experts regardless of American Honda's waiver of its right to object to the interrogatories. Nothing in the record suggests that American Honda did not sincerely believe that the September 16 order modified its obligations under the July 29 order.[4] American Honda's waiver of its right to object to the interrogatories and its failure to seek a protective order therefore did not make its violation of the July 29 order willful.
 
 
 31
 With respect to most of the interrogatories cited by the district court as the basis for the partial default judgment sanction, American Honda could have believed that the matters under inquiry were within the sole province of experts. The absence of an eyewitness to the accident required American Honda to rely upon accident reconstruction experts to answer the interrogatories concerning how the collision occurred and what happened to the motorcycle during the collision. The findings, observations, conclusions, and recommendations of experts who investigated the accident scene and analyzed the motorcycle fall within the scope of Rule 26(b)(4)(A)(i). Finally, the interrogatory addressing the possible defense of change of condition did not ask, as the district court appears to have assumed, whether or not American Honda intended to rely upon such a defense but rather asked American Honda to provide the technical basis for the defense if it intended to rely upon it. American Honda had to consult experts to secure that technical information.
 
 
 32
 Two of the interrogatories cited by the district court could have been answered by American Honda without the aid of experts. One inquired about other lawsuits involving the conspicuity theory of liability. In its response, American Honda listed four suits but failed to identify a case in which it was the defendant that involved a conspicuity claim as a secondary theory of liability. The district court found that American Honda's explanation that it had filed that case in its records only under the primary theory of liability "may be believable." Likewise, we find no evidence in the record indicating that American Honda deliberately concealed the case. We conclude that its failure to identify the case was not willful.
 
 
 33
 The other interrogatory cited by the court that was not directed to experts asked American Honda to identify people it believed might have knowledge about the accident, the motorcycle, or the issues presented by the instant case. On March 1, 1984, when the parties exchanged lay witness lists, American Honda had not supplemented the response it filed on August 8, 1983, which identified only twelve people. But American Honda named 240 people on its lay witness list. Its only explanation for its failure to identify the additional potential witnesses earlier by supplementing its answer to the interrogatory is that some of them were disclosed to the plaintiffs during depositions and other proceedings. Even accepting that explanation, we must conclude from the record presented that American Honda deliberately failed to supplement its answer to the interrogatory concerning potential witnesses.
 
 
 34
 Sanctions imposed under Rule 37(b)(2) "must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." Insurance Corp. of Ireland, 456 U.S. at 707, 102 S.Ct. at 2106. This requirement reflects the rule of Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909), which held that striking the answer and entering default judgment against a corporate defendant that refused to produce any documents or to permit its officers to be deposed did not deny the defendant due process because its refusal to produce material evidence created a presumption that its asserted defense was meritless.
 
 
 35
 Unlike the defendant's refusal to disclose any material information in Hammond Packing, American Honda's failure to supplement its response to the interrogatory concerning potential witnesses does not give rise to a presumption that the denials in its answer to the complaint are untrue or that its defenses are meritless. When the district court imposed the sanction of partial default judgment, American Honda had made available to the plaintiffs, among other materials, a number of witness statements, numerous photographs of the accident scene taken on the date of the accident, photographs of American Honda's investigation of the accident scene and inspection of the motorcycle, videotapes of the investigation, the report of the highway patrolman who investigated the accident, a wiring diagram of the motorcycle, and an exhaustive list of studies and reports on the causes of motorcycle accidents, including a number of reports on motorcycle conspicuity and headlight use. In its responses to the interrogatories, it identified, among other people, the original purchaser of the motorcycle and the driver of the tractor ditcher, who later was deposed. It also set forth the factual basis upon which it contended that the plaintiffs (both the minor plaintiff and her parents) were negligent. Finally, nothing in the record suggests that American Honda's failure to identify any potential witness in a timely manner adversely affected the plaintiffs' ability to establish that the motorcycle's lack of conspicuity caused or contributed to the accident, or that the delay helped to conceal information tending to show the invalidity of one or more of American Honda's possible defenses. In these circumstances, allowing American Honda to suffer partial default judgment because of its single willful violation of the July 29 order would be unjust.
 
 
 36
 Nothing in this opinion should be read as absolving American Honda or as suggesting that on remand, the district court may not impose severe sanctions against it. In the face of the court's previous imposition of discovery sanctions, its unqualified command to answer all interrogatories fully and completely, its holding that American Honda had waived its right to object to the interrogatories, and its stern warning that further discovery problems would be met with increasingly severe sanctions, the reasonable, prudent course of action for American Honda would have been to seek a protective order clarifying the effect of the September 16 order upon the July 29 order. We consistently have held that sanctions may be imposed even for negligent failures to provide discovery. See Lew v. Kona Hospital, 754 F.2d 1420, 1427 (9th Cir.1985); Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir.1978). American Honda's willful delay in identifying individuals having knowledge about the accident or the issues involved in this case likewise is sanctionable. We leave it to the district court to determine the appropriate sanctions. We hold only that in the circumstances presented by this record, the district court did not have authority under either its inherent powers or Rule 37(d) to impose sanctions against Honda Limited and exceeded the limits placed upon its discretion by due process in granting partial default judgment against American Honda.
 
 
 37
 REVERSED and REMANDED.
 
 
 
 [1]
 The court did not determine the amount of damages. It has stayed the trial on the issue of damages pending the disposition of the instant appeals
 
 
 [2]
 The Honda defendants also filed petitions for writs of mandamus (Nos. 84-7419 and 84-7426) that we consolidated with the instant interlocutory appeals (Nos. 84-4058 and 84-4059), ordering the parties to present all issues in a single set of briefs. Because the Honda defendants have obtained review by appeal, we need not engage in extraordinary review by mandamus. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 8 n. 6, 103 S.Ct. 927, 933 n. 6, 74 L.Ed.2d 765 (1983)
 
 
 [3]
 Although the court stated in its June 4 opinion that it had inherent authority to impose sanctions upon American Honda, it discussed only conduct of Honda Limited in the subsection of the opinion labeled "Inherent Power."
 
 
 [4]
 The plaintiffs contend that the September 16 order manifestly did not relieve American Honda of its obligation to answer the interrogatories in question. They emphasize that at the time the district court entered its July 29 order, the preliminary pretrial order then in effect contained the same language with respect to expert discovery that was contained in the September 16 order that later replaced it. But at the January 4, 1984 hearing on discovery sanctions, the plaintiffs argued that because "paragraph eleven of the [September 16] order ... supercede[d] discovery directed to expert witnesses," they were not required to identify the experts they had consulted in their answers to interrogatories. The district court agreed. Although that ruling was limited only to interrogatories seeking the identities of expert witnesses and, as we explain further below, does not excuse American Honda's failure to seek a protective order, American Honda could have inferred from the colloquy and court's decision that it was not obliged to answer most of the interrogatories in question