**In re Tom RUBIN, dba Tom Rubin & Associates, Debtor.**

**Tom RUBIN, dba Tom Rubin & Associates, Appellant,**

**v.**

**BELO BROADCASTING CORPORATION, dba WFAA TV; Cox Broadcasting Corporation, dba WSB TV; WIIC TV, Inc., a wholly owned subsidiary of Cox Broadcasting Corporation; King Broadcasting Company, dba King AM; Miami Broadcasting Corporation, dba KTVU; Gaylord Broadcasting, dba KSTW; Fisher Broadcasting, Inc., dba KOMO TV; Hubbard Broadcasting, Inc., dba KSTP; Teleco Indiana, Inc., dba WTTV Television; Gaylord Broadcasting Company of Ohio, dba WUAB TV, Appellees.**

**Bankruptcy No. LA 81–01874–JM.**
**BAP No. CC 82–1299–VHG.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Feb. 29, 1984.

Herbert Wolas, Stephen D. Drushal, Robinson, Wolas & Diamant, Los Angeles, Cal., for appellant.

Daniel H. Slate, Gendel, Roskoff, Shapiro & Quittner, Los Angeles, Cal., for appellees.

Before VOLINN, HUGHES and GEORGE, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge.

This is an appeal by the alleged debtor in an involuntary bankruptcy case from an order for relief entered as a result of the court having struck the debtor's answer as a sanction for abuse of the discovery process. We AFFIRM.

## I. INTRODUCTORY

The debtor, Tom Rubin & Associates, is a media consulting and purchasing firm operated by Tom Rubin as a sole proprietor. The debtor served advertiser clients, planning the use of media, purchasing broadcast time on radio and TV for advertising campaigns.

On February 9, 1981, an involuntary petition pursuant to 11 U.S.C. § 303 was filed against the debtor. Petitioning creditors included ten broadcasting companies owning TV and radio stations throughout the United States. The petition alleged, basically, that an order for relief was warranted on the grounds that the debtor was not generally paying his debts as they became due, as provided for by 11 U.S.C. § 303(h)(1). The debtor's answer denied the allegations of the involuntary petition contending that it had been filed in bad faith and, as an affirmative defense, alleged the petition had been filed for the purpose of

> "[e]xtorting payment from Rubin on claims for services which have not been performed. In this regard, Rubin alleges further that the claims of each of the petitioning creditors are contingent; that petitioning creditors failed to perform the services which were required of them and as a result of said failure to perform, Rubin has no liability to any of them whatsoever."

The foregoing language created an issue as to whether petitioning creditors had claims at all. Subsequently, similar contentions were made as to many of the debtor's accounts payable. These contentions brought into focus issues as to the nature and extent of claims and debts necessary to show that the debtor was not generally paying his debts, an essential element in determining whether an order for relief may be entered in an involuntary proceeding. Cases dealing with definition of the nature and extent of disputed debts demonstrate that examination of the grounds for dispute is necessary for a determination of the ultimate issue. *See In re Dill,* 30 B.R. 546 (Bkrtcy.App. 9th Cir., 1983) distinguishing contingent from disputed claims; *In re Covey,* 650 F.2d 877 (7th Cir.1981) holding that a debt which is entirely disputed may, under certain circumstances, be excluded from the not generally paying debts test; and *In re B.D. International Discount Corp.,* 701. F.2d 1071, 1077 (2nd Cir.1983) which, with reservations, followed *Covey.*

The debtor's position made it inevitable that extensive discovery would ensue.

## II. DISCOVERY LITIGATION

Because of the imposition of the severe sanction of default for discovery abuse, our discussion will treat of the facts at greater length than would be ordinarily warranted.

The summons issued with the involuntary petition set March 11, 1981, as the last day for answer. The debtor's answer was filed on that date. The following day, March 12, 1981, the debtor gave notice of an application for an order shortening time for a hearing to be held that day, March 12, 1981. At the hearing, various documents were handed to petitioning creditors' counsel, including a motion for an indemnity bond, a motion to abstain or dismiss, and 21 notices of deposition and request for production of documents for depositions. These notices directed the depositions of officers of Rubin's creditors, various radio and TV stations and networks. The depositions were scheduled for every business day from March 16, 1981 through April 10, 1981. The depositions were to be held in Pittsburgh, Atlanta, San Francisco, Los Angeles, New York, Indianapolis, and Dallas. Counsel for the petitioning creditors had no knowledge that the depositions would be sought and were given no opportunity for consultation as to the need for these depositions, or

scheduling thereof, See *In Re Rubin,* 693 F.2d 73 (9th Cir.1982).

The purpose of adverting to the foregoing is to indicate the calculated institution of the use of discovery, offensively, and later, defensively, by the debtor in order to cause the petitioning creditors the greatest difficulty and cost in establishing the central issue in the case: that the debtor was not generally paying its debts as they became due.

Counsel for the petitioners, realizing that this issue could result in a number of trials because of the debtor's disputing various accounts payable (as it turned out the debtor at one time, in response to interrogatories, denied he was obligated as to 43 of his accounts payable), instituted their own discovery procedures, particularly interrogatories and efforts to inspect or examine debtor's records.[1] On this front, the debtor waged a prolonged and uncompromising struggle to resist providing meaningful information as to the status of his accounts payable and the specific nature of or reason for any alleged dispute. Following is a discussion of major discovery failures.

### A. Sullivan Deposition

The creditors attempted at the outset to take the deposition of the debtor's custodian of records, notice having been served on March 16, 1981. Thereafter some delay occurred because of the confusion caused by the intensive discovery schedule imposed on all counsel by the debtor, as indicated above. Creditors' counsel, however, persisted in their effort to voluntarily obtain the debtor's permission for inspection of records, a number of communications having been exchanged during March, 1981. Consent not having been granted, a subpoena duces tecum was served on one Tom Sullivan as custodian of the debtor's records, requiring record production on March 30, 1981. The subpoena was ignored. During the month of April there were numerous communications by letter and telephone with the result that on April 21, 1981,

creditors' counsel filed an application for an order directing the debtor to make discovery.

As a result of the application for the order directing debtor to make discovery filed April 21, 1981, Sullivan, on May 1, 1981, appeared for a deposition, producing approximately 30 boxes of documents, stating that box 19 contained "the entire content of our files with regard to unpaid media." The accountant retained by creditors to examine the records, did so and found that box 19 contained

"... a large number of loose documents. There appeared to be no order to the documents; there was no way of ascertaining the total of accounts payable. There was no way that I could tell solely by inspecting the documents the amounts of the accounts payable."

The accountant observed that documents presented appeared to include paid invoices, duplicates of other documents in the box, as well as a large number of invoices which appeared to be unpaid. As a result of debtor's failure to produce, an order was entered on May 7, 1981. The court found therein that the debtor had wilfully failed to make discovery and expressly reserved imposing sanctions for this wilful failure. (ER 226–227).

Sullivan was served again with a subpoena duces tecum on June 30, 1981, wherein he was directed to appear for deposition on July 9, 1981. Previously a similar subpoena had been served on the debtor, Rubin. The debtor refused to produce Sullivan or any records until his own deposition had been concluded. However, the debtor did not make himself available, thereby requiring creditors to file a motion to compel Sullivan's attendance. An order was entered on October 9, 1981, compelling Sullivan's attendance at a deposition which was then noticed for February 19, 1982. Even then, there were delays, resulting in another order, entered March 1, 1982, requiring Sullivan to appear for deposition on March 3, 4

---

1. Counsel could also have attempted to invoke then existing Bankruptcy Rule 1008 which provided another avenue for access to the debtor's records. However, in view of the history of discovery in this matter, such a move would simply have opened another area of dispute.

and 5 at the debtor's offices. The debtor did not comply with this order, debtor's counsel simply advising creditors' counsel that Sullivan would not appear. Thereafter, the debtor served a motion for reconsideration of the order of March 1. This was calendared for March 29. Among the grounds urged for reconsideration was that Sullivan was not the custodian of the records despite a previous representation having been made that he was the custodian. On March 29, 1982, the motion to reconsider was denied and an order was entered on April 8, 1982, requiring Sullivan to appear for deposition on April 21, 22 and 23, the debtor's motion for a protective order in connection therewith having been denied. Sullivan was ordered, on May 1, 1982, to produce all of the documents set forth in the subpoena. This order, *inter alia,* stated:

"... after argument, the court finding the debtor has wilfully failed to make discovery, and good cause appearing therefor...

It is further ordered that the awarding of sanctions for wilful failure to make discovery is expressly reserved, and further order may be made at a later date..."

The order was not complied with. At the time of the denial of the motion to reconsider and for a protective order, the status conference for May 10, 1982 was set. As will be developed below, the status conference turned out to be a critical event.

Finding No. 99 details the difficulty found in requiring Sullivan to appear as custodian of the records to testify on deposition and that finally, on April 21, 1982, he appeared but did not produce all of the records set forth in the subpoena duces tecum. Finding No. 100 states that the failure to produce the records was "in bad faith, wilful and in flagrant disregard of rules of discovery and court orders requiring production."

### B. First Set of Interrogatories

These interrogatories were directed toward obtaining information from the. debtor relative to the 43 stations believed by the creditors to have claims against the debtor.

The interrogatories asked identical questions with respect to each of these accounts. The questions requested whether the debtor had received invoices, whether each invoice was paid in full, whether there was a dispute with respect to any claim, the nature and extent of the dispute and what efforts had been made to resolve same. Debtor's answers were found to be inconsistent and evasive, findings 30 and 31 stating:

"Debtor wilfully failed to comply with the rules of discovery regarding responses to the first set of interrogatories and the debtor acted in bad faith in preparation of the responses to the first set of interrogatories."

### C. Second Set of Interrogatories

The creditors filed a second set of interrogatories and served same on July 24, 1981, responses being due on August 24. No extension of time was requested nor granted. When the debtor, Tom Rubin, was deposed on August 29, sometime after the answers were due, he was asked if he had ever seen the interrogatories, to which he responded he had not. Responses to the interrogatories were filed on November 25, 1981, the last business day before the hearing on petitioning creditors' motion for sanctions for failure to make discovery, the hearing having been set for November 30. The court, in finding No. 39, found the answers ultimately furnished, to be

"... inadequate, evasive and non-responsive and designed to avoid appropriate discovery; that the debtor acted in bad faith in preparing the responses."

### D. Schedule of Disputed Claims

An order was entered on October 15, 1981, entitled "Order Re Schedule of Disputed Claims". The debtor was ordered to prepare and file before October 28, 1981, a schedule of disputed claims setting forth for each such claim the specific information required by the order. Basically, the order contained directions for specification of the grounds and nature of the dispute, if any, as to each of the debtor's allegedly disputed claims. This order was never appealed.

The debtor applied for extension of time to respond to the order by the date the schedule was to be furnished, October 28. By order entered November 2, the application for extension was denied. Thereafter, debtor's counsel engaged in evasions which resulted in a further order requiring filing of responses by November 10. An order was entered on November 13 requiring filing and service of the responses, and on November 25 the debtor filed a document entitled "Debtor's Written Statement Re Disputed Claims As Of February 19, 1981". This was the last business day before a hearing on creditors' motion for sanctions for failure to make discovery which had been set for November 30. The court, at the hearing, found that the written statement was evasive and not in compliance with the order and, further, that the debtor had not made a good faith effort to set forth the specific information required by the order re disputed claims. As a result of the hearing an order was entered on January 12, 1982, ordering the debtor to "respond precisely" on or before February 2, 1982. Findings 57, 61 and 62 find that the debtor's responsive supplement filed on February 2, 1982, was "evasive, incomplete, non-responsive and fails to comply with the order re disputed claims and the order entered July 12, 1981", and that such failure was wilful and in bad faith.

Examination of information furnished by the debtor, which is attached to the creditors' memorandum regarding the first and second sets of interrogatories, the schedule of disputed claims, and the debtor's responses thereto, (ER 704), demonstrates that the court's finding as to the information being non-responsive and evasive is supported by the record.

### E. Deposition on Written Questions

The creditors, having encountered frustration in discovery of the debtor, turned to his media creditors, propounding 29 questions concerning debtor's account to the 43 creditor broadcast stations. In response to these 29 interrogatories, the debtor submitted cross-questions which included approximately 205 sub-parts, seeking information from each witness station as to how it handled all its business with all of its customers, whether or not the dealings were related to the debtor's business. Finding No. 90 concludes or finds as an ultimate fact that the debtor acted in bad faith in preparing its cross-interrogatories and in requiring unrelated discovery of said witness stations.

## III. CONTENTIONS OF PARTIES

### A. Appellant

Basically, appellant's contentions are that (1) the debtor in fact appeared when and as required and responsively furnished discovery; (2) there was no motion pending for an order to compel discovery when the court, on its own initiative, at the May 10, 1982, status conference, invited the filing of a motion for sanctions under Rule 37 of the Fed.R.Civ.P.; (3) that provision for sanctions under Rule 37 was erroneously interpreted and applied; (4) that the bankruptcy court abused its discretion in striking the debtor's answer and entering a judgment involuntarily adjudicating the debtor, thereby depriving him of a trial on the merits and due process under the Fifth Amendment to the United States Constitution.

### B. Appellee

The appellee's position may be summarized as follows: The record supports the court's ultimate findings that the debtor acted in bad faith and wilful disregard of the discovery rules in serving and filing responses or in failure to comply with various orders of the court; that the bankruptcy court did not abuse its discretion in striking the debtor's answer and entering an order of relief.

## IV. STANDARD OF REVIEW

### A. Findings

Insofar as review of the court's findings are concerned, they were for the most part based on a record consisting primarily of documents in the form of pleadings, including orders, affidavits, and record material attached thereto. While the standard of

review under the clearly erroneous doctrine may not be as directly applicable as in the ordinary type of trial, it is clear that the court considered a wide range of material in its files and records, particularly prior orders relating to discovery, as evidenced by the voluminous record in this case.[2] It is evident that the court's findings are supported by the record.

### B. Abuse of Discretion

■ The basic standard to be considered in this case is abuse of discretion, *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 29 L.Ed.2d 747 (1976):

> "The question, of course, is not whether this court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing..."

The appellant contends that the sanction proceeding was initiated by the court below, *sua sponte,* and that the court abused its discretion in this respect. This contention is based on *Black Panther Party v. Smith,* 661 F.2d 1243, 1259 (D.C.Cir.1981). Appellant's citing of the case is based upon a footnote which responds to the dissenting opinion. The discussion and citations in the footnote provide little, if any, support for appellant's position. In any event, it is clear from the record of the May 10 status conference that the matter of sanctions was brought up in open court by the appellees who advised the court that it was their view that the discovery process was being frustrated because of non-compliance with orders of the court requiring discovery and that they were facing trial without the discovery they were entitled to. The record shows that orders were entered requiring discovery and deferring imposition of sanctions for wilful failure to make discovery to another day. Under the circumstances, it was not inappropriate for the court to consider a hearing on various outstanding orders and issues relative to imposition of sanctions. The motion filed pursuant thereto by the creditors served to define and provide a focus for examination of these issues which were to be heard and considered at the hearing scheduled to begin the following May 27. It may be noted that the transcript of this hearing shows that counsel was extended every opportunity to be heard by the court which gave consideration and reconsideration to appellant's extensive presentation and argument with Job-like patience.

Appellant contends that Fed.R.Civ.P. 37(b)(2) sanctions may be granted only when a party has failed to obey an order to provide or permit discovery entered under Rule 37(a)(2); that sanctions under Rule 37(d) are authorized only when there has been a total failure to make discovery, citing *SEC v. Research Automation Corp.,* 521 F.2d 585 (2nd Cir.1975). This case is factually inapposite and distinguishable. However, the discussion therein at p. 589, and the case cited, *Bourne, Inc. v. Romero,* 23 F.R.D. 292 (E.D.La., 1959) would warrant imposition of the sanction.

■ Rule 37(b)(2) provides that when a party fails to obey an order to provide or permit discovery, the court may enter such orders as are just, including an order striking pleadings. This rule is applicable in bankruptcy proceedings, *In re Rice,* 14 B.R. 843, 8 B.C.D. 410 (Bkrtcy. 9th Cir.1981). The Rule 37(b)(2) order is not limited to enforcement of orders made under Rule 37(a). It is apparent that Rule 37(b)(2) applies generally to orders providing or permitting discovery "including" an order made under subdivision (a) of the Rule. The purpose of Rule 37 is to authorize enforcement of all orders relating to discovery. *See Chism v. National Heritage Life Insurance Co.,* 637 F.2d 1328 (9th Cir. 1981) where various orders and provisions not originating in Rule 37(a) were the basis

---

2. By way of illustration see Memorandum Opinion of U.S. Bankruptcy Judge Lloyd King filed in the District Court, N.D.Cal., Feb. 8, 1982, ER Vol. I, p. 97, stating: "... it appears that the alleged debtor is attempting to overwhelm the petitioning creditors and other creditors with burdensome, oppressive and vexatious discovery proceedings..."

of a motion to dismiss which was granted and upheld.

In any event, there were a number of discovery orders which were found by the court not to have been complied with at all. Since these orders were designed to enforce discovery, they were, in effect, Rule 37(a) orders. These include the order on disputed claims entered on October 15, 1981, requir-'ing the debtor to file his schedules, providing specifications and detailed information regarding his accounts payable; there was a further order relative to the schedules entered on January 12, 1982. Several orders were required to bring about Sullivan's appearance for deposition and to produce documents as to which the court found that there was no good faith compliance. Appellant's argument that there was no violation of a discovery order is without foundation in fact.

The facts here are similar to those in *Chism, supra,* p. 1331:

"The record ... makes it manifest that the sanction of dismissal with prejudice was applied only after a persistent pattern of abusive conduct on plaintiff's part. Chism or his attorney continually flouted discovery rules, failed to comply with pretrial conference obligations, and repeatedly violated the local rules of court."

*Chism* also states the basic rule on review:

"Our task in reviewing the propriety of a sanction imposed by a district court is limited to determining whether we have a 'definite and firm conviction' that it was clearly outside the acceptable range."

As indicated, we do not have such a conviction based on examination of this record.

## V. CONCLUSION

■ The record in this case demonstrates that debtor, from the outset, was determined to force appellants into trial without an information base as to the status of the debtor's relationship with his creditors. Discovery was of legitimate concern to the creditors who were faced with problems of proof, since it was their burden to demonstrate that the debtor was not generally paying numerous debts which the debtor denied or disputed. The court's findings that the failure of appellant to provide discovery was wilful and in bad faith are fully supported by the record.

The court also found (finding No. 101) that there was serious misconduct on the part of the debtor and his counsel, the latter having acted in such manner as to prolong the time necessary to bring the matter to issue; that they had avoided appropriate discovery, and had obstructed and delayed the judicial process.

In finding 111, the court referred to the fact that on September 21, 1981, the petitioning creditors had filed a motion citing Rule 37(a), (b) and (d), seeking the sanction of striking the debtor's answer, because of the debtor's failure to make discovery. Again on November 27, 1981, an application for sanctions for failure to make discovery was considered. Thus the debtor knew the applications for sanctions were outstanding. The court, in finding 119, stated:

"The debtor has successfully avoided making appropriate discovery of his financial condition for over a year and one-half as a result of his bad faith discovery tactics and the passage of that time is to the prejudice of petitioning creditors and their ability to gather information and relevant facts relating to debtor's financial condition."

The court evidenced its consideration of a range or choice of sanctions as required in *Tolbert v. Leighton,* 623 F.2d 585 (9th Cir. 1980), by stating in its final conclusion:

"Any sanctions of this court authorized under Rule 37(b), other than the striking of debtor's answer in total, and entry of an order for relief would be neither adequate nor just."

The foregoing was directly in line with the *International Hockey League* case, *supra.* The court there stated:

"But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be

available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."

427 U.S. 643, 96 S.Ct. 2781.

This case bears considerable similarity to *Matter of Visioneering Construction and Development Company,* 661 F.2d 119 (9th Cir.1981) where the bankruptcy court, under analogous circumstances, struck the debtor's answer in an involuntary proceeding. The action of the court was upheld because of the debtor's "obstructionist and delaying tactics". *See* also *Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Penthouse Intern., Ltd. v. Playboy Enterprises,* 663 F.2d 371 (2nd Cir.1981).

The factor of public policy in generally effecting bona fide use of court procedures and rules is given great weight. In *U.S. Freight Co. v. Penn Central Transp. Co.,* 716 F.2d 954, 955 (2nd Cir.1983) the court referred to a number of recent decisions, stating:

"General deterrence, rather than mere remediation of the particular parties' conduct, is a goal under Rule 37; . . ."

We conclude that the conduct of appellant and his counsel, based on the considerations heretofore stated, merited the sanction imposed by the court below.

The order on appeal is AFFIRMED.