FLETCHER, Circuit Judge:
Rubin appeals the bankruptcy court’s dismissal of his answer to a petition for involuntary bankruptcy as a sanction for his conduct during discovery. We reverse.
I. BACKGROUND
Tom Rubin operates a media consulting firm and advertising agency under the name of Tom Rubin & Associates. On February 19, 1981, several broadcasting companies (“Creditors”) filed a petition for involuntary bankruptcy against Rubin, alleging that he generally was not paying his debts as they came due. See 11 U.S.C. § 303 (1982) (amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, §§ 426, 427, 98 Stat. 333, 369). Rubin timely answered the petition and denied Creditors’ allegations.
*613 The discovery process in this case began after Rubin answered the petition, when he filed a motion to dismiss and noticed depositions of twenty-one of Creditors’ corporate officers, to commence immediately and to continue for the next four weeks in seven cities across the United States. After the first deponent did not appear as scheduled, the court granted Rubin’s motion for sanctions against Creditors.[1]
Creditors also began their own discovery shortly after Rubin answered the involuntary petition. They noticed depositions of Tom Rubin and of Rubin’s custodian of records, and they requested Rubin to produce his accounts payable records at the custodian’s deposition. Rubin’s counsel twice postponed the depositions. The court granted Creditors’ motion to compel but reserved their request for sanctions. The custodian of records appeared as ordered on May 1 and produced thirty-three boxes of documents. Creditors claimed the documents were disorganized and nonsensical.
In June and July, Creditors served on Rubin two sets of interrogatories. While Rubin failed to answer either set on time, he eventually did answer the first set two days before a sanctions motion was to be heard, and the second set fifteen days after the date set in a court order. Creditors moved to compel further answers but eventually withdrew the motion.
In October, the court ordered Rubin to prepare and file a schedule of disputed claims by October 28. When Rubin did not comply, the court set a new due date of November 10. Rubin filed the schedule on November 25. The court found Rubin’s schedule insufficient and ordered him to respond more precisely by February 2, 1982. Rubin timely filed a supplement, which Creditors contend was still insufficient.
Creditors also sought to depose Rubin’s custodian of records for a second time. After Rubin’s counsel twice postponed the deposition, the court granted Creditors’ motion to compel, and Creditors noticed the deposition for February 1982. In February, Rubin’s counsel again attempted to postpone the scheduled date, and Creditors moved to direct Rubin to make his offices available for the deposition on March 3-5, 1982. The court granted the motion, but Rubin did not comply. Instead, he filed a motion for reconsideration of the court’s order. The court denied Rubin’s motion and ordered the deposition to go forward at Rubin’s offices on April 21-23. The deposition took place as ordered on April 21 and was scheduled to continue the next day. That day, one of Rubin’s counsel was delayed due to a court appearance. Creditors’ counsel left after waiting twenty minutes, and refused to reconvene the deposition.
The discovery process as a whole was extensive, and included, in addition to the matters set forth above, depositions on written questions from Rubin of forty-three radio and television stations across the country, and several ancillary proceedings in other courts to compel document production from many of these stations. In all, Creditors conducted fifteen depositions of Rubin’s accountants, employees, and customers. They deposed Tom Rubin himself in five separate sessions.
On May 10, 1982, the court called a status conference to consider the parties’ readiness for trial. At the outset of the conference, although no motions for sanctions or to compel discovery were outstanding, the court invited argument concerning whether it should impose sanctions against Rubin for his conduct during discovery. It then set the matter over until May 27, to allow Creditors to prepare and file a formal motion for sanctions. After the May 27 hearing, the court entered an order, striking Rubin’s answer and entering an order for relief as a sanction under Fed.R.Civ.P. 37. Rubin appealed to the Bankruptcy Ap *614 pellate Panel (“BAP”), which affirmed the bankruptcy court’s order. 37 B.R. 232 (9th Cir.1984).
II. DISCUSSION

A. Jurisdiction

Rubin contends the bankruptcy court had no jurisdiction over this case in light of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (“Bankruptcy Amendments”). Rubin contends the Bankruptcy Amendments add a new jurisdictional requirement in involuntary proceedings, that the claims of petitioning creditors not be subject to bona fide disputes. He asserts that the amendments apply to pending cases and therefore are applicable here. Since the bankruptcy court in this case has not determined that Creditors’ claims were not subject to bona fide disputes, he would have us remand to the bankruptcy court to permit it to make a determination of its jurisdiction.[2]
Absent manifest injustice or congressional intent to the contrary, we generally apply the law as it exists when we render our decision. Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); In re Reynolds, 726 F.2d 1420, 1422 (9th Cir. 1984). This rule applies to changes in the law that affect jurisdiction. See, e.g., Andrus v. Charlestone Stone Products Co., 436 U.S. 604, 608 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978); Carlton v. Baum, Inc., 751 F.2d 781, 787 & n. 6 (5th Cir.1985). However, we conclude that with regard to section 303 the Bankruptcy Amendments do not impose jurisdictional requirements.[3]
Subject matter jurisdiction deals with a court’s competence to hear and determine cases of the general class to which the proceedings in question belong and the power to deal with the general subject involved in the action. In re Earl’s Tire Service, Inc., 6 B.R. 1019, 1022 (D.Del. 1980). The bankruptcy court in the instant *615 case was vested with this general power under 28 U.S.C. § 1471 (superseded by the Bankruptcy Amendments, Pub.L. No. 98-353, § 104(a), 98 Stat. 333, 340-41 (to be codified at 28 U.S.C. § 157)). Section 1471 authorized the bankruptcy court to “exercise jurisdiction of all cases under title 11,” and vested in them “exclusive jurisdiction of all the property” of debtors in such cases. Id.
We conclude that the undisputed claims requirement of the Bankruptcy Amendments is not jurisdictional. Rather, it goes to the merits — an element that must be established to sustain an involuntary proceeding. Petitioning creditors cannot prevail unless they show that their claims are not subject to bona fide disputes, but the bankruptcy court is not without jurisdiction prior to this determination.
The bankruptcy court had subject matter jurisdiction in this case under 28 U.S.C. § 1471. The bankruptcy court’s order striking Rubin’s answer and entering an order for relief was a final decision. In re Mason, 709 F.2d 1313, 1315 (9th Cir. 1983). The BAP’s affirmance was a final decision for our purposes. In re Sambo’s Restaurants, Inc., 754 F.2d 811, 814-15 (9th Cir.1985). Accordingly, we have jurisdiction under section 104(a) of the Bankruptcy Amendments, Pub.L. No. 98-353, § 104(a), 98 Stat. 333, 341 (to be codified at 28 U.S.C. § 158),[4] and we reject Rubin’s jurisdictional challenge.[5]

B. Propriety of Sanctions

We review a trial court’s imposition of sanctions for an abuse of discretion. Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc., 727 F.2d 1470, 1473 (9th Cir.1984); United States v. Sumitomo Marine & Fire Insurance Co., 617 F.2d 1365, 1369 (9th Cir.1980). The question is not whether this court would as an original matter impose the sanctions chosen by the trial court, but whether the trial court exceeded the limits of its discretion. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); In re Visioneering Construction, 661 F.2d at 123.
Rule 37 sanctions must be just and must be specifically related to the particular “claim” that was at issue in the order to provide discovery. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. at 707, 102 S.Ct. at 2106; Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1340-41, 1342 (9th Cir. 1985); Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 591 (9th Cir.1983). To determine whether a sanction is “just,” we examine whether the trial court considered the relevant factors and whether the severity of the sanction is warranted by the conduct involved.
We conclude that the bankruptcy court abused its discretion in this case. *616 Our conclusion rests on a combination of factors, including the severity of the sanction, the absence of any clear warning to Rubin, the apparent adequacy of alternative sanctions, and the absence of prejudice to Creditors.

1. Notice and Warning

The bankruptcy court struck Rubin’s answer under Rule 37(b) of the Federal Rules of Civil Procedure,[6] a rule applicable only to cases in which a party has disobeyed a court order. Fremont Energy Corp. v. Seattle Post Intelligencer, 688 F.2d 1285, 1287 (9th Cir.1982). The bankruptcy court found that Rubin had violated several discovery orders: (1) Rubin’s May 1 production of documents in a random fashion made review of the documents difficult and constituted a violation of the court’s order to produce records; (2) Rubin’s failure to file a schedule of disputed claims and answers to the second set of interrogatories until November 25, 1981, violated the court’s order that these documents be filed by November 10; (3) Rubin’s supplement to its statement of disputed claims was incomplete, evasive, and nonresponsive and did not comply with the court’s December 30 order to file “precise responses;” (4) Rubin’s failure to make his offices available for the deposition of his custodian of records on March 3-5 constituted a violation of the court’s March 1 order; and (5) Rubin’s failure to produce at the custodian’s deposition all the records requested in Creditors’ subpoena duces tecum violated the court’s order of April 8, 1982.
We are troubled by the findings that relate to the sufficiency of Rubin’s submissions in response to court orders, i.e., the May 1981 production of documents, the supplement to the statement of disputed claims, and the April 1982 production of documents. The first time the court indicated that these submissions were insufficient was when it entered the order imposing sanctions. At no time did the court give any warning; at no time did it order further production, nor did Creditors ever move to compel further production.
A party should be given some indication by the court of how its discovery responses have been deficient. See, e.g., EEOC v. Troy State University, 693 F.2d 1353, 1357 (11th Cir.1982) (court never clearly articulated what documents EEOC was required to produce; dismissal held improper), cert. denied, 463 U.S. 1207, 103 S.Ct. 3538, 77 L.Ed.2d 1388 (1983). Moreover, it is common practice for trial courts to issue warnings or to make orders of default or dismissal conditional on a party’s continued noncompliance with an outstanding order to compel. In several of our cases, such warnings were an important factor in upholding the use of severe sanctions. See, e.g., Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc., 727 F.2d at 1474 (district court entered order to produce or risk having certain facts established); Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Investment Corp., 711 F.2d 902, 904 (9th Cir.1983) (magistrate’s order to respond to interrogatories and produce documents contained warning that failure to comply would result in default); United States v. Sumitomo Marine & Fire Insurance Co., 617 F.2d at 1367 (district court entered order that unless interrogatories were answered by certain date, complaint would be dismissed).
In In re Visioneering Construction, 661 F.2d at 119, a case strongly relied upon by Creditors, the bankruptcy court repeatedly accommodated an alleged debtor in involuntary proceedings before striking its answer as a sanction for discovery abuses. The court “bent over backward, including ... setting over hearings on the motion to enter default to give [the debtor] another chance to comply with discovery orders.” Id. at 123.
*617 In contrast, the bankruptcy court in this case did not have before it any outstanding motions for sanctions or motions to compel when it ordered that Rubin’s answer be stricken. The court did not conditionally order further production nor did it warn Rubin at any time that it was contemplating dismissal.[7]
2. Lesser Alternative Sanctions
Rule 37(b) provides a broad range of sanctions, dismissal and default being the harshest of all. The structure of Rule 37(b) necessarily suggests that a trial court should consider lesser sanctions before resorting to dismissal or default. See In re MacMeekin, 722 F.2d 32, 35 (3d Cir.1983); Jones v. Louisiana State Bar Association, 602 F.2d 94, 97 (5th Cir.1979) (per curiam); Vac-Air, Inc. v. John Mohr & Sons, Inc., 471 F.2d 231, 234 (7th Cir.1973); cf. Tolbert v. Leighton, 623 F.2d 585, 587 (9th Cir. 1980) (consideration of less drastic alternatives required before dismissal of action for failure to prosecute).
In its formal findings, the bankruptcy court stated that it had considered and rejected alternative sanctions. But the court offered no explanation why lesser sanctions would not have been effective. The court could have ordered that Rubin’s discovery be stayed pending adequate responses to Creditors’ discovery requests, or imposed monetary sanctions against Rubin, or a combination of the two.[8] The court did none of these things; in fact, it never ordered sanctions of any kind against Rubin before ordering that the answer be stricken. Striking the answer, of course, was an extremely severe sanction. Its effect was to adjudge Rubin a bankrupt, depriving him of control of his assets, and making his assets available to satisfy the alleged debts. See In re Mason, 709 F.2d at 1317.
3. Prejudice to Opposing Parties
The bankruptcy court raised the issue of sanctions on its own motion at a hearing called to consider the parties’ readiness for trial. At the hearing, Creditors’ counsel stated, “We are ready for trial with the exception that the trial is going to be probably a little bit longer than it should be if there had been appropriate pre-trial discovery____”
The degree to which a party is prejudiced by his opponent’s failure to permit discovery is an important factor in determining the severity of the sanction to be imposed. Compare United States v. Sumitomo Marine & Fire Insurance Co., 617 F.2d at 1370 (eighteen months of delays and failures to comply with court-ordered discovery caused “unmistakable” prejudice to defendant; order precluding proof of damages affirmed); Puerto Rico v. S.S. Zoe Colocotroni, 628 F.2d 652, 665-66 (1st Cir.1980) (defendants admitted liability, which caused plaintiffs to cancel scheduled *618 depositions, but later recanted admission and failed to produce witnesses; conduct “materially prejudiced” plaintiffs’ trial preparation; order that liability be admitted affirmed), cert. denied, 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981), with Marshall v. Segona, 621 F.2d 763, 768-69 (5th Cir.1980) (plaintiff’s response to interrogatories four days late did not prejudice defendant and did not justify sanction of dismissal); cf. Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1102 (9th Cir.1981) (district court’s refusal to impose sanctions for defendants’ delay in producing documents not an abuse of discretion because plaintiff could not show that he had been prejudiced by delay), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). In Wyle v. R.J. Reynolds Industries, Inc., we noted that
[sjanctions interfering with a litigant’s claim or defenses violate due process when imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.
709 F.2d at 591 (citing G-K Properties v. Redevelopment Agency, 577 F.2d 645, 648 (9th Cir.1978)) (emphasis added); see also Fjelstad v. American Honda Motor Co., 762 F.2d at 1342.
The bankruptcy court found that Rubin’s failure to cooperate in discovery prejudiced Creditors’ ability to gather information relating to the involuntary petition and caused them to incur attorneys’ fees and other costs. To the extent the court concluded that Creditors had been prejudiced in trial preparation, this is directly contradicted by Creditors’ counsel’s assertion that they were ready to go to trial. That leaves only the increased costs and fees Creditors expended, but this effectively could have been remedied by an award of monetary sanctions. Although some prejudice might have resulted from Rubin’s conduct during discovery, it did not “threaten to interfere with the rightful decision of the case,” and was insufficient to justify the sanction imposed.
4. Severity of Sanctions
We conclude that Rubin’s conduct was not egregious enough to warrant the harsh sanction of default.- The only clear violations of court orders committed here were Rubin’s filing of his disputed claims statement and his answer to the second set of interrogatories fifteen days late and his refusal to make his offices available for the deposition of his custodian of records until ordered a second time.[9] Rubin remedied both violations, and neither seriously prejudiced Creditors. Rubin’s conduct simply does not rise to the level of .contumaciousness involved in other cases in which we have affirmed the use of severe sanctions. See, e.g., Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Investment Corp., 711 F.2d at 904-06 (defendants failed to produce documents for four months after court order, raised frivolous objections to two key interrogatories, stated that answers to interrogatories could be found in partnership books, but did not specify precisely where in books the answers could be found); Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d at 589-91 (defendants falsely denied material fact, deliberately deceived trial court, repeatedly attempted to frustrate document production); United States v. Sumitomo Marine & Fire Insurance Co., 617 F.2d at 1367-68, 1370 (eighteen months of delays and failures to comply with court-ordered discovery); G-K Properties v. Redevelopment Agency, 577 F.2d at 647 (plaintiffs failed to produce documents for four months and despite three court orders).
Most recently, in Fjelstad v. American Honda Motor Co., 762 F.2d at 1334, we *619 held that imposition of a default judgment against a defendant was too severe a sanction and offended due process. In that case, the defendant filed incomplete and misleading interrogatory answers and delayed providing information for over a year despite repeated court orders compelling responses, imposition of attorneys’ fees and $50,000 as sanctions, and an express warning that sanctions would increase if further discovery problems arose. Id. at 1337-1388. We concluded that the defendant willfully failed to answer only one interrogatory (the defendant could have interpreted an earlier court order as permitting delay in answering other interrogatories), and that this was not a sufficient ground to support the harsh sanction of default, especially given the considerable amount of other information the defendant had disclosed and the absence of prejudice to the plaintiff. Id. at 1340.
Creditors rely on our decision in In re Visioneering Construction, 661 F.2d at 119. But that case involved conduct far more egregious than Rubin’s. In Visioneering, we noted that the debtor had engaged in a “litany of willful discovery abuses,” including failure to attend a noticed deposition, filing evasive and incomplete answers to interrogatories, and not responding to document requests. Id. at 121. The debtor engaged in eight months of “constant obstructionist tactics,” id., and its conduct amounted to a “near total refusal to facilitate discovery.” Id. at 124.
We do not find a similar degree of obstructionist conduct in the case before us. To be sure, this has been a hard-fought action from the outset, and, as Rubin’s counsel noted at oral argument, both sides probably have been overly litigious. We do not condone counsels’ conduct in this litigation. But Rubin’s conduct must be viewed in the context of the entire discovery process, and it must be noted that Rubin complied with the bulk of Creditors’ discovery requests without objection. See, e.g., Fjelstad v. American Honda Motor Co., 762 F.2d at 1340. We sympathize with the bankruptcy court’s efforts to supervise the discovery in this difficult case. But the Rule 37 sanctions are intended as a tool to compel production of evidence and to deter misconduct; a court should not go beyond the necessities of the situation to foreclose the merits of controversies as punishment for general misbehavior. See 4A J. Moore, J. Lucas & D. Epstein, Moore’s Federal Practice 1137.03[2], at 37-62 (1984) (construing Societe Internationale Pour Participations Industrielles et Commercials, S.A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)); see also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. at 643, 96 S.Ct. at 2781. The sanction was too severe to be “just” under these circumstances.
III. CONCLUSION
We have jurisdiction to hear and decide this appeal. Under the circumstances of this case, we conclude that the bankruptcy court abused its discretion by striking Rubin’s answer as a discovery sanction. Accordingly, we reverse the judgment of the bankruptcy court and the decision of the Bankruptcy Appellate Panel and remand this action for trial.[10]
REVERSED and REMANDED.

. Creditors appealed the sanctions order to the Bankruptcy Appellate Panel, which reversed on the basis that Creditors were not given adequate notice of the motion and hearing. Rubin appealed to this court, but we dismissed the appeal for lack of jurisdiction. In re Rubin, 693 F.2d 73, 76-77 (9th Cir.1982).

. The Bankruptcy Amendments modify subsections 303(b)(1) and (h)(1) of the Bankruptcy Code, 11 U.S.C. § 303(b)(1), (h)(1), to read as follows (emphasis indicates inserted language):
(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title — (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject on [sic] a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; ...
(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition is filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if — (1) the debtor is generally not paying such debtor’s debts as such debts become due unless such debts that [sic] are the subject of a bona fide dispute; ____
Pub.L. No. 98-353, § 426, 98 Stat. 369. These provisions became effective on July 10, 1984. Pub.L. No. 98-353, § 553(b), 98 Stat. 392.

. Some cases, including ones from this court, have characterized analogous section 303 requirements as "jurisdictional.” See, e.g., In re Mason, 709 F.2d 1313 at 1318-19 (9th Cir.1983); In re Visioneering Construction, 661 F.2d 119, 122 (9th Cir.1981); In re First Energy Leasing Corp., 38 B.R. 577, 580-81 (Bankr.E.D.N.Y. 1984); In re All Media Properties, Inc., 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), aff’d mem., 646 F.2d 193 (5th Cir.1981). Our cases illustrate, however, that these requirements are not jurisdictional in the technical sense of subject matter jurisdiction, but are instead substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings.
In Mason, we held that a debtor in an involuntry proceeding waives the requirement for three petitioning creditors if he fails to raise the issue in his answer. 709 F.2d at 1318-19. In Visioneering, we held that a bankruptcy court could deem admitted petitioning creditors' allegations that several named corporations were alter egos of the same entity, owing debts to each of the creditors. 661 F.2d at 122. The fact that Mason and Visioneering permitted waivers indicates that the requirements were not truly prerequisites to subject matter jurisdiction, since parties cannot confer subject matter jurisdiction on a federal court by their consent. See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701-03, 102 S.Ct. 2099, 2103-05, 72 L.Ed.2d 492 (1982) (holding that a court may enter an order that personal jurisdiction is deemed established as a sanction under Rule 37(b); Court distinguishes subject matter jurisdiction).

. We cite to 28 U.S.C. § 158 here, rather than the former provision governing our jurisdiction, 28 U.S.C. § 1293, because this case was pending before us on July 10, 1984, when the Bankruptcy Amendments became effective, and, as we note in the text, generally we must apply the law in effect when we render our decision. See In re Amatex Corp., 755 F.2d 1034, 1037 (3d Cir. 1985).

. Rubin raises one other jurisdictional challenge that can be disposed of summarily. He contends the BAP lacked jurisdiction .to hear the appeal from the bankruptcy court after December 24, 1982, the termination date of the stay entered by the Supreme Court in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, 459 U.S. 813, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982). The BAP decided Rubin’s appeal on February 29, 1984.
We find it difficult to understand why Rubin makes this argument, because, if the BAP lacked jurisdiction then we lack jurisdiction and the bankruptcy court's decision against Ruin would stand. Nonetheless, the argument fails in light of In re Burley, 738 F.2d 981 (9th Cir.1984). There, we held that the BAP was constitutional as an adjunct to the court of appeals, id. at 986. and, more specifically, that "the BAP may issue decisions in all cases in which the order of the bankruptcy court was entered before entry of the mandate in Marathon.” Id. at 983. Here, the bankruptcy court entered judgment on July 9, 1982, well before expiration of the Marathon stay. Thus, we have jurisdiction under Burley

. Former Bankruptcy Rule 737 (applicable during the pendency of this action in the bankruptcy court; now Bankruptcy Rule 7037), made Fed.R.Civ.P. 37 applicable to bankruptcy actions.

. Recently, in Fjelstad v. American Honda Motor Co., 762 F.2d 1334 (9th Cir. 1985), we rejected a defendant’s argument that it was not given adequate warning before entry of a default judgment as a discovery sanction. Id. at 1340. In that case, however, the district court’s discovery order was explicit, the defendant admitted that its interrogatory answers were incomplete, and the court expressly warned the defendant that it was considering severe sanctions. Id. at 1337, 1340. The defendant in Fjelstad was given clear warning that the court considered its recovery answers insufficient. In contrast, Rubin had no idea that the court found his discovery responses insufficient until the court announced this as support for the sanction it imposed.
It should also be noted that in Fjelstad, this court nonetheless found dismissal too harsh a sanction. Id. at 1342; see supra p. 618.

. Admittedly, monetary sanctions might be ineffective against a debtor in an ordinary bankruptcy case, but this is not an ordinary case. Rubin apparently is still conducting business and is paying debts and his own attorneys’ fees during the pendency of the involuntary proceeding. In fact, some of the Creditors apparently are still doing business with Rubin and continue to extend credit to him.
Alternatively, to the extent that Rubin’s counsel was the cause of any discovery misconduct, the court properly might have imposed sanctions against him.

. The other violations the court found, as we note above, see supra, pages 615-616, had to do with the inadequacy of Rubin’s responses to discovery requests, and we find these violations of little weight in supporting the sanction, because Rubin was never informed of the inadequacies.

. We remand this case without prejudice to the imposition, consistent with this opinion, of such other lesser, sanctions as the bankruptcy court might deem appropriate.