**L. TARANGO TRUCKING,**
**et al., Plaintiffs,**

v.

**COUNTY OF CONTRA COSTA,**
**et al., Defendants.**

**No. C–98–2955 WHO.**

United States District Court,
N.D. California.

Aug. 27, 2001.

David J. Berger, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, Michelle Alexander, American Civil Liberties Union Foundation of Northern Ca Inc., Julian A. Gross, Employment Law Center Legal Aid Society of S.F., Oren M. Sellstrom, Bay Area Lawyers Committee for Civil Rights, San Francisco, CA, Karl M. Manheim, Loyola Law School, Daniel Tokaji, American Civil Liberties Union Foundation of Southern California, Los Angeles, CA, for plaintiffs.

Ember Lee Shinn, Darren P. Roach, Gregg M. Ficks, Kathy M. Banke, Crosby, Heafey, Roach & May, Oakland, CA, Victor J. Westman, County Counsel, Gregory C. Harvey, Bernard L. Knapp, Office of County Counsel, Martinez, CA, Darren P. Roach, Crosby, Heafey, Roach & May, San Francisco, CA, for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

In this class action race discrimination lawsuit against the County of Contra Costa ("County") and its Board of Supervisors, defendants produced 141 pages of relevant documents during the last two days of trial. The day after trial, defendants produced an additional sixty-one pages of documents. On July 3, defendants produced thirty-three additional pages of documents. Plaintiffs now move for a default judgment as a sanction for defendants' failure to produce these documents earlier in the litigation or, alternatively, to strike certain trial testimony presented by defendants. For the reasons set forth below, the Court denies plaintiffs' motion for a default judgment or other evidentiary sanctions, and instead orders that the trial be reopened at defendants' expense so that plaintiffs can present whatever testimony they wish about the newly disclosed documents.

## I.

This class action lawsuit is brought by L. Tarango Trucking; Lidia Tarango; Harrison's Consulting; Lisa Harrison; F.E. Jordan Associates; Frederick Jordan; Laid Rite Floor Coverings; Glenn Fox; Hercules/Pinole/Rodeo, El Cerrito, Pittsburg and Richmond Branches of the NAACP; Northern California Latin Business Association; The Coalition for Economic Equity; the class of all minority-owned business enterprises ("MBEs") who are ready, willing and otherwise qualified to enter into contracts to perform work for the County now and who will be ready, willing and otherwise qualified to do so in the future and their minority owners; and the class of all women-owned business enterprises ("WBEs") who are ready, willing and otherwise qualified to enter into contracts to perform work for the County now and who will be ready, willing and otherwise qualified to do so in the future and their women owners. Defendants are the County of Contra Costa and the following members of the Contra Costa County Board of Supervisors, in their official capacity: John Gioia, Gayle Uilkema, Donna Gerber, Joe Canciamilla, and Mark Desaulnier.

The sole issue remaining for trial was whether defendants should be enjoined from violating the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by intentionally discriminating against MBEs and WBEs in awarding County contracts. A twelve-day bench trial was held on June 4–7, 11–14, and 18–21, 2001.

On the morning of June 20, 2001, prior to the start of the second to last day of trial, defendants produced for the first time ten pages of Health Services Outreach Reports referred to by County employee Ginger Marieiro in her testimony the previous day. The reports were entered into evidence as Exhibit U–2. Exhibit U–2 consists of charts summarizing MBE and WBE participation in purchasing transactions and professional/personal services contracts entered into by the County Health Services Department for the last two quarters of 2000. Plaintiffs' counsel moved to strike prior testimony based on this unexpected production of documents, but the

Court deferred ruling until the parties could brief the issue.

Late that evening, defendants faxed plaintiffs an additional 130 pages of previously unproduced outreach reports for the last two quarters of 2000 from the following departments: Health Services, Agriculture, Animal Services, Assessor, Auditor–Controller, Bethel Island Fire District, Building Inspection, Clerk–Recorder, Community Services, Cooperative Extension, Crockett–Carquinez Fire District, County Counsel, Contra Costa County Fire Protection District, Human Resources, Information Technology, Library, O'Brien–Kreitzberg, Probation, Public Defender, Public Works, Risk Management, Office of the Sheriff, Treasurer–Tax Collector, and Veterans Service Office. The following morning, on the last day of trial, plaintiffs introduced these additional reports as Exhibit 589. The only remaining witness was Patti McNamee of the County Public Works Department, but she testified that she had never seen the reports from her department that were included in Exhibit 589 and had no information about the data in those reports.

The day after trial ended, on June 22, 2001, defendants produced an additional sixty-one pages of previously unproduced documents containing outreach reports for the last two quarters of 2000 for the following departments: Assessor's Office, Building Inspection, Clerk–Recorder, Community Development, County Counsel, Employment & Human Services, Health Services, and Library.

In defendants' opposition papers, they attest that they produced thirty-three more pages of outreach reports and draft outreach reports on July 3, 2001. (Roach Decl. ¶ 21 and Ex. P.) Defendants' counsel Darren Roach ("Roach") attests that plaintiffs and the Court now have all known quarterly outreach reports, including drafts of reports not sent to the Affirmative Action Office. (*Id.* ¶ 22.) Defendants have submitted letters from various County departments stating that all existing quarterly outreach reports have now been provided to defendants' counsel. (*Id.* ¶ 22 and Ex. Q.)

## II.

Plaintiffs contend that defendants' untimely production of these documents made a fair trial impossible because plaintiffs were prevented from using the documents in cross-examination. Plaintiffs request that the Court enter default judgment against defendants as a sanction pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure and the Court's inherent powers.

Alternatively, plaintiffs move to strike certain testimony by Scott Tandy, Gerald Bender, Jennifer Fowler, Ginger Marieiro, Patti McNamee, and Frank Puglisi and associated exhibits, all of which are itemized in detail in Appendix A to plaintiffs' motion. Plaintiffs further seek that the following facts be deemed to be established:

1. Defendants decided not to release the data contained in Exhibits U–2 and 589, and DEF 190142–202 publicly or to the County's Advisory Council on Equal Opportunity, because they believed that the data would show that the County is substantially underutilizing MBEs and WBEs in comparison to their availability.

2. The undisclosed information regarding utilization of MBEs and WBEs indicates that the County is substantially underutilizing MBEs and WBEs in comparison to their availability.

3. Following receipt of the data contained in Exhibits U–2 and 589, and DEF 190142–202, defendants decided to discontinue tracking data on the award of County contracts to MBEs and WBEs, because they believed that this data would continue to show that the County is substantially underutilizing MBEs and WBEs compared to their availability.

## A.

The documents defendants finally produced at the end of trial contained information that plaintiffs repeatedly sought to obtain in discovery. On February 12, 1999, plaintiffs served their first request for documents on defendants, which included the following specific requests:

*REQUEST NO. 14:*

  All documents relating to any studies or reports concerning the utilization or under-

utilization of WBEs and MBEs in County contracts.

.    .    .    .    .

*REQUEST NO. 23:*

All documents relating to or discussing the amount of County contracts awarded to WBEs and MBEs each year since 1990.

.    .    .    .    .

*REQUEST NO. 29:*

All documents relating to actions taken by the County to track or record the use of MBEs and WBEs in County contracts.

.    .    .    .    .

*REQUEST NO. 31:*

All documents relating to the efforts of any department within the County to increase, decrease, or monitor the utilization of MBEs and WBEs in County contracts. (Berger Decl. ¶ 3, Ex. 1 at 6–8.) On August 26, 1999, Magistrate Larson granted plaintiffs' motion to compel production of documents responsive to these document requests, for the period 1990 to the present. (*Id.* Ex. 2 at 4–5.) Magistrate Larson ordered defendants to produce responsive documents by September 30, 1999. (*Id.* at 6.)

There can be no dispute that the documents defendants produced at the end of trial fall squarely within the scope of plaintiffs' requests for document production.

### B.

Although those documents were all created after Magistrate Larson's Order, that is no excuse for failing to produce them. Rule 26(e) of the Federal Rules of Civil Procedure provides:

A party who has ... responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

.    .    .    .    .

(2) A party is under a duty seasonably to amend a prior response to ... [a] request for production ... if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other

parties during the discovery process or in writing.

Defendants continued to produce documents to plaintiffs until April 18, 2001. (Berger Decl. ¶ 12.)

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides for sanctions if a party fails to supplement its discovery responses in accordance with Rule 26(e). Rule 37(c)(1) provides:

A party that without substantial justification fails ... to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Rule 37(b)(2)(A), (B) and (C) expressly authorizes the Court to order that certain facts be deemed to be established, to prohibit the disobedient party from introducing designated matters into evidence, and to render a judgment by default against the disobedient party as a sanction.

Whether the Court is asked to impose default pursuant to Rule 37 or pursuant to its inherent powers, the same standard applies. *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1412 n. 4 (9th Cir.1990). The Court must consider five factors before declaring a default: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy of favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Id.* at 1412. In addition, in order to enter default as a sanction, the Court must find willfulness or bad faith. *Id.* at 1412 n. 5.; *see also Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357

U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

### 1.

The first two factors are neutral. As plaintiffs have moved for default judgment as a sanction *after* the end of trial, the case will be resolved soon whether or not the Court grants plaintiffs' motion.

### 2.

■ The third factor is the degree to which plaintiffs have been prejudiced by defendants' conduct. Plaintiffs are considered to have suffered prejudice if the defendants' actions impaired the plaintiffs' ability to go to trial or threaten to interfere with the rightful decision of the case. *Adriana*, 913 F.2d at 1412.

Defendants argue that the documents produced at the end of trial have no relevance to the issue of whether they intentionally discriminate against minority— and women–owned businesses. They also argue that because the documents they produced at the end of trial do not provide data for all of the County's departments, they are not highly relevant in any event.

■ Defendants are correct that proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). "[O]fficial action will not be held unconstitutional solely because it results in a racially [or sexually] disproportionate impact." *Village of Arlington Heights*, 429 U.S. at 264–65, 97 S.Ct. 555.

■ Discriminatory impact, however, is not irrelevant. *Washington*, 426 U.S. at 242, 96 S.Ct. 2040. "Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race [or sex] than another." *Id.*

Plaintiffs have consistently argued that the County's long-term pattern of low utilization of MBE and WBE contractors shows an intent to discriminate against them. The County's data on actual MBE and WBE uti-

lization is, thus, highly relevant to plaintiffs' case. In fact, because plaintiffs are seeking injunctive relief, the County's data on current MBE and WBE utilization is at the very core of plaintiffs' case. By denying plaintiffs access to the County's most current data, defendants have seriously prejudiced plaintiffs' ability to put on their case. The fact that the data may be incomplete is no excuse for withholding it. The data is unquestionably useful to plaintiffs, it was repeatedly sought by plaintiffs, and defendants' failure to produce it until the end of trial caused great prejudice to plaintiffs.

### 3.

The fourth factor is the public policy of favoring the disposition of cases on their merits. This factor weighs against entering default judgment in every case.

### 4.

■ The fifth factor is the availability of less drastic sanctions. There is no more severe sanction than the entry of judgment against a party. Entry of default judgment as a sanction is authorized only in extreme circumstances. *United States v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir.1988). "So, too, are orders taking the plaintiff's allegations as established and awarding judgment to the plaintiff on that basis." *Id.* (footnote omitted).

Plaintiffs contend that because the trial has been completed, there are no other sanctions short of entry of default judgment or, alternatively, the striking of testimony and an order deeming certain facts to be established, that can redress defendants' misconduct. In fact, there is a lesser sanction available, as defendants grudgingly recognize at the very end of their opposition brief. (*See* Opp'n at 25 n. 17.) The Court could reopen the trial and permit plaintiffs to present whatever additional testimony they wish to present about the newly disclosed documents, whether it be through their own experts and witnesses or through cross-examination of defendants' witnesses. Such a sanction would support the public policy of favoring the disposition of cases on their merits while eliminating any prejudice to plaintiffs resulting from defendants' discov-

ery abuses. In a case of such public importance, it is important that the Court resolve plaintiffs' allegations on the merits, rather than imposing judgment for plaintiffs as a means of punishing defendants for their transgressions in discovery. As Justice Brandeis said many years ago, sunlight is the best disinfectant.[1]

■ Because the need for such a supplemental trial proceeding has been caused entirely by defendants' failure to comply with their discovery obligations, the Court could impose the entire cost of the proceeding on defendants. See Fed.R.Civ.P. 37(c)(1) (authorizing the Court to require the offending party to pay the reasonable expenses, including attorneys' fees, caused by the failure to comply with its discovery obligations). Requiring defendants to pay the cost of the additional trial proceedings sends a strong message that playing "hide the ball" in discovery does not go unpunished. Simply reopening the trial, without requiring defendants to pay the expenses associated with the supplemental proceeding, would require plaintiffs to bear much of the burden caused by defendants' misconduct. Only by requiring defendants to pay for plaintiffs' preparation for and participation in the supplemental trial proceedings does the Court truly redress plaintiffs' injury.

### 5.

The Court also must consider whether defendants acted willfully or in bad faith or without substantial justification in failing to produce key documents until the end of trial.

■ The Court cannot enter a default judgment against defendants without first finding that they acted willfully or in bad faith by failing to produce the documents in a timely manner. Adriana, 913 F.2d at 1412 n. 5. The standard for willfulness is not a stringent one. A party acts willfully if it engaged in "disobedient conduct not shown to be outside the control of the litigant." Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1341 (9th Cir.1985). "Disobedient

conduct" connotes deliberate malfeasance, rather than mere inadvertence. Id.

■ Lesser sanctions can be imposed if defendants failed to produce the documents "without substantial justification." Fed. R.Civ.P. 37(c)(1). "[S]anctions may be imposed even for negligent failures to provide discovery." Fjelstad, 762 F.2d at 1343.

■ The Court may consider prior conduct that has already been sanctioned when weighing a subsequent sanctions motion. Halaco Eng'g Co. v. Costle, 843 F.2d 376, 381 n. 2 (9th Cir.1988). Accordingly, the Court will begin by reviewing briefly the discovery disputes that plaintiffs previously brought to the Court's attention.

### a.

On June 30, 1999, plaintiffs moved to compel defendants to produce documents responsive to plaintiffs' First Set of Requests for Production of Documents ("Requests"), which were served on February 19, 1999. Defendants had designated approximately 250,000 pages of documents, but plaintiffs complained that defendants had not reviewed the documents for responsiveness and were trying to shift that burden onto plaintiffs. Plaintiffs also complained that defendants offered to make the documents available for plaintiffs' review in a number of offices around Contra Costa County. Plaintiffs sought an order requiring defendants to review the documents for responsiveness, to list the documents that were being withheld on grounds of privilege, and to produce responsive nonprivileged documents as soon as possible.

In response, defendants complained that plaintiffs had unclean hands and had hardly produced any documents themselves, and argued that the document collection process was very burdensome. They offered to produce all responsive nonprivileged documents by November 19, 1999, nine months after the Requests were served.

1. See Buckley v. Valeo, 424 U.S. 1, 67, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (quoting L. Brandeis, Other People's Money 62 (National Home Library Foundation ed. 1933)) ("Publicity is justly

commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.")

On August 26, 1999, Magistrate Larson granted the motion to compel in part and denied it in part. He granted the motion to compel production of documents responsive to most of the Requests, and ordered defendants to produce the documents and a privilege log by September 30, 1999. Magistrate Larson permitted defendants to produce the documents in the offices where they were kept in the normal course of business, however, without specifying which documents were responsive to which Requests.

#### b.

On October 25, 1999, Magistrate Larson issued a second discovery order in response to letter briefs submitted by the parties. Defendants were insisting that plaintiffs bring their own copy machine to each of defendants' offices during business hours to copy defendants' documents. Defendants would not allow plaintiffs to remove the documents from the premises to take to an offsite copy service. Defendants also demanded that plaintiffs identify which documents they were copying, in order to avoid "trial by ambush." Plaintiffs objected that if they had to identify the documents they were copying, they would be revealing privileged work product.

Magistrate Larson ordered defendants to permit their documents to be removed for copying offsite, but also ordered plaintiffs to identify the documents they were copying.

#### c.

On March 29, 2000, Magistrate Larson held a hearing pursuant to an Order to Show Cause on allegations that defendants had destroyed documents. Plaintiffs contended that defendants had destroyed or reorganized documents that plaintiffs had identified for review and copying. At the hearing, defendants conceded that six boxes of documents had been shredded by a County employee. Defendants offered to attempt to reconstruct the files that had been destroyed.

On July 10, 2000, Magistrate Larson issued a Report and Recommendation in which he concluded that defendants destroyed responsive documents because they had given inadequate attention and care to their obligations to identify and preserve potentially relevant documents. Four of the boxes of documents that were destroyed contained eighteen construction project files from 1991 through 1993, while the other two boxes contained files from the 1980s. Because of an inaccurate index, all of the boxes were misidentified as containing documents from the 1980s, and were destroyed because they were outside the scope of the Court's order that documents be produced only from 1990 to the present.

Magistrate Larson found that defendants' inattention to their discovery responsibilities amounted to willful destruction of documents. He recommended that the Court draw an adverse inference against defendants that the destroyed files reflected discrimination against women— and minority–owned businesses in the awarding of County contracts. He also recommended imposition of a $5,000 fine.

Defendants filed objections to Magistrate Larson's Report and Recommendation. At the August 24, 2000 hearing on the matter, Judge Hamilton stated:

> I find that the destruction of the document[s] was clearly grossly negligent on his part, on the County's part.
>
> But I do not find that that in and of itself establishes either willfulness or bad faith on the part of the County. I don't find that the document destruction was intentional.
>
> Now, in the absence of there being bad faith, intentional conduct or gross willfulness, I don't find that this kind of sanction is appropriate. I think that the defendant is correct when they argue that Rule—that neither Rule 26, Rule 37, Rule 11 permit the imposition of this kind of sanction for the kind of behavior that has been described.

(Roach Decl.Ex. J, Tr. Aug. 24, 2000 hearing at 18:13–25.) Later in that hearing, Judge Hamilton stated:

> I agree that what occurred here was inappropriate. It was wrong. It should not have occurred. I understand that it works somewhat of a hardship on the plaintiffs' presentation, prosecution of this matter. I understand that.
>
> But I just want you to understand that the inference of discrimination is in my

view an ultimate finding in this case, and I wouldn't go that far unless I believed that what occurred here was done on purpose, intentionally, in bad faith for the purpose of causing you extreme difficulty in the presentation of your case. And I am simply not persuaded.

(*Id.* at 29:3–13.)

The same day, Judge Hamilton issued an Order rejecting Magistrate Larson's recommendation that she impose evidentiary sanctions against defendants because "plaintiffs have not established the requisite degree of either willfulness or prejudice." (*Id.* Ex. K, Order at 3:1–2.) She gave plaintiffs the opportunity to propose an alternative evidentiary sanction, or to request an increase in the amount of the monetary sanction.

On September 12, 2000, Judge Hamilton issued a second order denying plaintiffs' request for an evidentiary sanction, again on the grounds that plaintiffs had not made an adequate showing of willfulness or prejudice. She doubled the amount of monetary sanctions, however, to $10,000, despite finding that plaintiffs had not adequately documented their expenses.

d.

With respect to the documents defendants produced at the end of trial, defendants' counsel, Ember Lee Shinn ("Shinn"), attests that as of October 2000, she knew that County departments were being asked to submit reports on their contracting activities in purchasing, professional services and construction. (Shinn Decl. ¶ 4.) She was not aware, however, that any County department had submitted any such reports. (*Id.* ¶ 5.)

On October 11, 2000, Emma Kuevor testified at her fourth deposition that such reports were to be submitted to her, but that she had not yet received any reports. (*Id.* ¶ 5, and Ex. A, Kuevor Dep. at 396:13–398:16.) Shinn attests that plaintiffs never asked for copies of those reports at any time during or after that deposition. (*Id.* ¶ 6.) Shinn attests that she did not learn that any of these reports had actually been submitted until Friday evening, June 15, 2001, at the end of the second week of trial. (*Id.* ¶ 15.) She received a copy of reports submitted by the Health Services Department that evening. (*Id.*)

She did not produce the reports on Monday, June 18, although she now recognizes that she should have produced them. (*Id.* ¶ 16.) Instead, she waited until June 20, when she offered the reports into evidence. (*Id.* ¶ 19.) On June 18, she asked Kuevor's office for copies of other outreach reports. (*Id.* ¶ 17.) Shinn sent those reports to plaintiffs' counsel on the evening of June 20. (*Id.* ¶ 19.) On June 21, the last day of trial, Shinn learned of the existence of more reports, and sent them to plaintiffs' counsel on June 22. (*Id.* ¶ 20.)

Shinn concedes that the documents she produced at the end of trial should have been produced earlier, but attests that she did not deliberately withhold them. (*Id.* ¶ 22.) Until she heard Kuevor's testimony on June 12 that some departments had submitted outreach reports, Shinn "had not focused on the fact that some departments had submitted reports to the Affirmative Action Office." (*Id.* ¶ 14.) Shinn also attempts to excuse her failure to learn of the existence of the reports before trial by pointing to distractions in her life because of her relocation to Hawaii in March 2001, and the fact that plaintiffs never asked her to obtain copies of the reports. (*Id.* ¶¶ 6, 12.)

Gregory C. Harvey ("Harvey"), Assistant County Counsel for the County of Contra Costa, has also submitted a declaration. Harvey attests that although he has monitored this litigation since its inception, he was unaware until the last day of trial that the County Counsel's office had prepared and submitted outreach reports to Kuevor. (Harvey Decl. ¶ 2.) Those reports would normally be prepared by the officer manager or her designee, and would not normally be prepared, reviewed, or signed by Harvey or anyone in his division, and were not in this case. (*Id.* ¶ 3.)

There is nothing before the Court to suggest that the documents defendants produced at the end of trial were deliberately withheld from plaintiffs. Rather, the evidence strongly suggests that both counsel were overwhelmed by pretrial preparation and that neither side followed up on Kuevor's deposition testimony in October 2000 that such reports were in the process of being pre-

pared. Plaintiffs' failure to aggressively seek out the reports and defendants' failure to ascertain whether any such reports ever were prepared were both grossly negligent. The Court cannot conceive how the parties could let such important data simply slip through the cracks. Regardless of whether plaintiffs ever specifically asked for the reports, however, defendants had an affirmative duty to produce them under Rule 26(e)(2) of the Federal Rules of Civil Procedure. Defendants' failure to do so, although not willful or in bad faith, was certainly not substantially justified simply because they failed to determine whether the documents existed.

Although there were serious discovery disputes prior to trial, Judge Hamilton expressly found that defendants had not acted willfully or in bad faith. Similarly, the Court finds that defendants did not act willfully or in bad faith in failing to produce key documents until the end of trial. Their failure to do so was grossly negligent, without question, but as there is no evidence of bad faith or willfulness, plaintiffs' requested sanction of a default judgment is inappropriate. Similarly, plaintiffs' request for evidentiary sanctions is also inappropriate.

What is appropriate is that the trial be reopened, so that plaintiffs can present whatever testimony they wish to present about the late-produced documents. As the need for reopening the trial was caused by defendants' failure to produce the documents in a timely manner, defendants will bear the entire cost of plaintiffs' preparation for, and participation in, the additional trial proceedings.

### C.

Paragraph 23 of Shinn's declaration makes the situation even worse. Shinn sheepishly concedes that defendants have generated thousands of other highly relevant documents that were created after the close of discovery, but that were never produced to plaintiffs in any supplemental production, despite defendants' duty to do so. Shinn attests that "the County stands ready to respond to any further requests or directives." (Shinn Decl. ¶ 23.)

Defendants will produce these documents to plaintiffs forthwith, and if plaintiffs wish to examine any witness at the supplemental trial proceeding on the contents of these newly produced documents, they may do so.

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for a default judgment or evidentiary sanctions against the defendants pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure is DENIED. Instead, the Court will impose the following lesser sanction on defendants, pursuant to Rule 37(c)(1):

a. Trial will be reopened so that plaintiffs can present any evidence or testimony that they wish to present about the late-disclosed documents.

b. Defendants will produce any witness that plaintiffs wish to cross-examine about the documents that defendants produced at the end of trial.

c. The entire cost incurred by plaintiffs in preparing for and litigating the reopened trial proceedings, including attorneys' fees, will be paid by defendants.

2. Defendants will produce, by September 4, 2001, all documents created after the close of discovery that should have been produced in a supplemental production pursuant to Rule 26(e)(2) of the Federal Rules of Civil Procedure. Documents may be produced in the manner set forth in Magistrate Larson's Orders of August 26 and October 25, 1999. Plaintiffs will pay the cost of copying any documents that defendants produce, just as they would have done if the documents had been produced in a timely manner. At the reopened trial proceedings, defendants will produce any witness that plaintiffs wish to examine about these newly disclosed documents.

3. The reopened trial will commence on Monday, October 15, 2001, at 9:00 a.m.

4. A status conference will be held on Tuesday, September 18, at 10:00 a.m. The parties will file a status conference statement no later than Friday, September 14, 2001, in which the parties will notify the Court of the status of the case, the expected length and

scope of the reopened trial proceedings, and any additional difficulties, if any, that have arisen as a result of implementing this Opinion and Order.

5. The parties may submit supplemental posttrial briefing after the conclusion of the reopened trial proceedings.